Filed 12/20/13  In re Patrick R. CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re PATRICK R., a Person Coming Under the Juvenile Court Law. | |
| SAN MATEO COUNTY HUMAN SERVICES AGENCY,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>NORA R.,<br><br>        Defendant and Appellant. | A137028<br><br>(San Mateo County<br>Super. Ct. No. JV82476) |

Nora R., the mother of Patrick R., filed an omnibus notice of appeal purporting to appeal from a number of orders generated by the juvenile court. Only the final dispositional order, which is among the orders specified in the notice, is appealable.  (*In re Athena P*. (2002) 103 Cal.App.4th 617, 624.)  The sole claim of error appellant presents is that substantial evidence does not support one of the juvenile court's two jurisdictional findings, specifically, the finding that Patrick was a minor described within subdivision (c) of Welfare and Institutions Code section 300.[1]

---

[1] Subsequent references to a specific subdivision will be understood as addressed to the subdivisions of Welfare and Institutions Code section 300.

1

Respondent San Mateo County Human Services Agency argues we need not reach the merits of appellant's claim because it is moot in light of the return of Patrick to appellant's custody. We could conclude the appeal is moot, but we choose not to do so.[2]

Respondent then argues that appellant's argument, even if we conclude it has merit, would not necessarily produce a reversal of the dispositional order because there would still be another jurisdictional finding—that Patrick was also within subdivision (b) of section 300—which appellant does not contest, and this other finding would by itself suffice to support the assertion of the juvenile court's jurisdiction. (*In re I.J.* (2013) 56 Cal.4th 766, 773; *In re Joshua G.* (2005) 129 Cal.App.4th 189, 202.) Thus, even if appellant persuades us that there is no substantial subdivision (c) evidence, the subdivision (b) evidence would still require affirmance of the dispositional order. This is, in effect, another mootness argument, and therefore covered by our decision to proceed with the merits. We do so because there is a common thread to the two findings, and appellant's claim should be addressed.

Patrick was found to come within subdivisions (b) and (c), which provide in pertinent part:

"Any child who comes within any of the following descriptions is within the jurisdiction of the juvenile court which may adjudge that person to be a dependent child of the court:

"[¶] . . . [¶]

"(b) The child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child, or the willful or negligent failure of the child's parent or guardian to adequately supervise or protect the child from the conduct of the custodian with whom the child has been left, or by the willful or negligent

---

[2] Actually, there is one aspect of the appeal we will treat as moot. Appellant's argument that it was error to remove Patrick from her custody is clearly academic in light of his return.

2

failure of the parent or guardian to provide the child with adequate food, clothing, shelter, or medical treatment, or by the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness, developmental disability, or substance abuse. . . .

"(c) The child is suffering serious emotional damage, or is at substantial risk of suffering serious emotional damage, evidenced by severe anxiety, depression, withdrawal, or untoward aggressive behavior toward self or others, as a result of the conduct of the parent or guardian or who has no parent or guardian capable of providing appropriate care. . . ."

The scope of these provisions is well-established:

"Jurisdiction is appropriate under section 300, subdivision (b) where the court finds '[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of . . . the willful or negligent failure of the parent or guardian to provide the child with adequate food, clothing, shelter, or medical treatment . . . .' . . . [T]hree elements must exist for a jurisdictional finding under section 300, subdivision (b): '(1) neglectful conduct by the parent in one of the specified forms; (2) causation; and (3) "serious physical harm or illness" to the minor, or a "substantial risk" of such harm or illness.' (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 820.) 'The third element "effectively requires a showing that at the time of the jurisdiction hearing the child is at substantial risk of serious physical harm in the future (e.g., evidence showing a substantial risk that past physical harm will reoccur). [Citations.]" ' (*In re David M.* (2005) 134 Cal.App.4th 822, 829, quoting *In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1396.)" (*In re J.O.* (2009) 178 Cal.App.4th 139, 152.)

With respect to subdivision (c), it " 'sanctions intervention by the dependency system in two situations: (1) when parental action or inaction causes the emotional harm, i.e., when parental fault can be shown; and (2) when the child is suffering serious emotional damage due to no parental fault or neglect, but the parent or parents are unable

3

themselves to provide adequate mental health treatment.' " (*In re Shelley J.* (1998) 68 Cal.App.4th 322, 329, quoting *In re Alexander K.* (1993) 14 Cal.App.4th 549, 557.)

Respondent alleged that Patrick came within subdivision (b) as follows: "On August 6, 2012, the child, Patrick [R.] [then almost fifteen years old], found a loaded handgun that the mother, Nora [R.], had left in a location that was accessible to him. And fired a shot into the living room wall. Furthermore, when law enforcement arrived at the home the next day, the mother lied about possessing the gun, but the child informed them where the weapon and ammunition were kept."

Respondent alleged that Patrick came within subdivision (c) as follows: "Within the last two weeks, the child, Patrick [R.], who has been diagnosed with Asperger's Syndrome and Anxiety Disorder, and is currently taking Zoloft and Ritalin, has physically assaulted and battered the mother, Nora [R.], and within the last three months has chased her with a baseball bat, and pushed her down, breaking two of her ribs. Additionally, on August 6, 2012, the child, Patrick [R.], found a loaded handgun that the mother, Nora [R.], had left in a location that was accessible to him. And fired a shot into the living room wall. Furthermore, when law enforcement arrived at the home the next day, the mother lied about possessing the gun, but the child informed them where the weapon and ammunition were kept. The mother's minimalization of the dangerous incidents that the child's special needs have presented, as well as her ongoing inability to adequately address these special needs, places the child [at] substantial risk of harm."

Appellant contends there is no substantial evidence that her conduct "caused Patrick to suffer serious emotional damage," or that her conduct constituted "abusive maltreatment . . . that caused him emotional harm." Appellant further claims the absence of substantial evidence that she was not capable of providing Patrick with "appropriate care," or that she was "unable to provide him adequate mental health treatment."

As previously intimated, appellant has no response to one aspect of the juvenile court's decision, namely: "That leaves us with the undisputed fact the gun was in the home, clearly was loaded, and clearly in a location . . . where

4

Patrick found it.  So whether we believe that the mother left it somewhere loaded or simply knew that the nanny had left it somewhere accessible [to Patrick] . . . it seems to the Court that this satisfies the standard that there's a substantial risk that the child will suffer serious *physical* harm."  (Italics added.)  "[O]bviously, that situation could have resulted in death or injury to Patrick or . . . to someone else, clearly."[3]  Appellant's arguments steer clear of this totally sensible, and completely justified, conclusion, which, again, is by itself sufficient to sustain the assertion of the juvenile court's jurisdiction.  (*In re I.J.*, *supra*, 56 Cal.4th 766, 773.)

With respect to subdivision (c), appellant insists there is no evidence that Patrick received "abusive maltreatment" at her hands that "caused serious emotional harm to Patrick."  This approach misperceives the scope of the statute, which does not wait upon the existence of actual harm, but aims to forestall potential or likely harm.  (*In re Cole C.* (2009) 174 Cal.App.4th 900, 917; *In re Leticia S.* (2001) 92 Cal.App.4th 378, 383, fn. 3; *In re Eric B.* (1987) 189 Cal.App.3d 996, 1003.)

Appellant is correct that the record is full of evidence that she is sincerely devoted to Patrick, and fiercely protective of what she believes to be his best interests.  Her motives may be of the purest, but her methods have proven problematic.  Appellant is not entirely forthcoming with information to Patrick's therapist and caseworkers.  Patrick is not entirely forthcoming with appellant and others, fearful of her adverse reactions.  And it was appellant's tendency to restrict the disclosure of damaging or unfavorable information (such as falsely telling police that she disposed of the firearm) that the caseworker characterized as "minimizing" the dangerous incidents.  Even more damaging, the caseworker testified that appellant had made no "attempts to address" Patrick's "physical

---

[3] The caseworker was even more blunt:  "I mean, he could have killed himself.  He could have seriously harmed himself.  He could have killed her [appellant and/or the nanny].  He could have taken that gun out into the community and killed somebody.  I mean, . . . we have an autistic child playing with a loaded gun."

5

aggression" towards her, a manifestation of emotional turmoil that is specifically mentioned in the statute.

Although the evidence does not qualify as overwhelming, it is adequate to sustain a finding that Patrick was at risk of serious emotional harm within the meaning of subdivision (c).

The dispositional order is affirmed.

_____
Richman, J.

We concur:

_____
Kline, P.J.

_____
Brick, J.[*]

---

[*] Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.