28 Cal.Rptr.3d 213 (2005)
129 Cal.App.4th 189
In re JOSHUA G. et al., Persons Coming Under the Juvenile Court Law.
Imperial County Department of Social Services, Plaintiff and Respondent,
v.
Marianne G. et al., Defendants and Appellants.
No. D044973.
Court of Appeal, Fourth District, Division One.
May 10, 2005.
*216 Neil R. Trop, under appointment by the Court of Appeal, for Defendant and Appellant Marianne G.
Monica Vogelman, under appointment by the Court of Appeal, for Defendant and Appellant Robert G.
Ralph Cordova, Jr., County Counsel, Gustavo A. Roman and Liza Barraza, Deputy County Counsel, for Plaintiff and Respondent.
Andrea R. St. Julian, under appointment by the Court of Appeal, San Diego, for Minors.
Certified for Partial Publication.[1]
HUFFMAN, J.
Marianne G. and Robert G. appeal the judgments terminating their parental rights to their children, Joshua G. and Jacob G., under Welfare and Institutions Code section 366.26.[2] Marianne asserts the court erred in denying her motion under Code of Civil Procedure section 128, subdivision (a)(8) to vacate the referral orders; erred by not advising her of the *217 possible consequences of waiving her right to a trial; and abused its discretion when it denied her request to continue the section 366.26 hearing. She also asserts insufficient evidence supported the finding of adoptability and the finding that the section 366.26, subdivision (c)(1)(A) beneficial relationship exception does not apply.
Robert asserts the judgments should be reversed because the Imperial County Department of Social Services (the Department) reneged on its agreement to recommend guardianship and was estopped from asserting the parents did not meet their burden to show an exception to adoption applied; extrinsic fraud or mistake denied the parents a fair adversary proceeding; and the court erred in terminating parental rights because he had a beneficial relationship with the children within the meaning of the section 366.26, subdivision (c)(1)(A) exception. Each parent has joined the appeal of the other. We affirm the judgments.

FACTUAL AND PROCEDURAL BACKGROUND
In January 2001, the Department removed three-year-old Jacob and two-year-old Joseph from Marianne's custody and filed a section 300 petition on the children's behalf. The petition alleged the children were at risk because Marianne left the children with her mother and had not returned, Marianne might be using drugs, and the children had been left without provision for their care by both parents. The petition was subsequently amended to allege a long history of domestic violence between the parents. In March, the court made true findings on the allegations in the petitions relating to Marianne, dismissed the petition as to Robert, declared the children to be dependents, removed the children from Marianne's custody, and ordered reunification services for her. The children were placed with their maternal grandparents.
Later in March 2001, the Department filed another section 300 petition alleging the children were at risk because the social worker had learned Robert had been convicted of violating a restraining order preventing him from contacting Marianne and he had left the children without provision for care and support. In April, the court made true findings on the petition. In June, the court again declared the children to be dependents, removed them from parental custody, and ordered reunification services.
In February 2002, the court found Marianne had been making substantial progress and continued her services for six more months. In April 2002, the court terminated Robert's reunification services because his progress with his case plan had been minimal. He appealed from this order. (In re Joshua G., 2003 WL 103553 (Jan. 13, 2003, D040132) [nonpub. opn.] (hereafter appeal D040132).) In August 2002, the court returned the children to Marianne's custody and continued the matter for six months. Robert appealed this order as well. (In re Joshua G., 2003 WL 1082307 (Mar. 12, 2003, D040859) [nonpub. opn.] (hereafter appeal D040859).)
In our January 2003 decision in appeal D040132, we reversed the order terminating Robert's reunification services and remanded the matter for the court to re-determine his progress on the reunification plan and determine whether he was provided with reasonable visitation. The next month, the court told counsel it had received "an opinion from the Court of Appeals with a tentative ruling," but had not yet received the remittitur. Simultaneously, the court terminated Marianne's family maintenance services and dismissed the matter as to her.
*218 In March, this court reversed the orders from the 18-month review hearing in appeal D040859. We remanded the matter for the court to reconsider the issue of returning the children to Marianne's custody in light of the outcome of the remand on the proceedings we had directed in appeal D040132. The court scheduled a new review hearing for July 2003.
In July 2003, apparently before the court had held the new 12-month review hearing we directed in appeal D040132, the Department filed a section 387 modification petition on behalf of the children. The petition alleged the children were at risk because Marianne had been arrested for possession of a controlled substance, had not made proper arrangements for the care and support of the children, and had not complied with her case plan, and her whereabouts were unknown. The petitions were amended in August 2003 to add a count that Marianne had a methamphetamine pipe in her possession and had admitted using methamphetamine. In September, the court made true findings on the section 387 modification petition.
In October 2003, the Department filed a status review report recommending the court terminate reunification services and schedule a section 366.26 hearing with the proposed permanent plan of adoption. At the November 2003 review hearing, it changed its recommendation to guardianship. The children's counsel, however, asked the court to prepare an adoption assessment. The court explained to the parents that although the Department was recommending guardianship, it would consider terminating parental rights at the section 366.26 hearing. The court scheduled the section 366.26 hearing.
In its initial assessment report, the Department recommended a permanent plan of guardianship. Two months later, however, it filed an assessment report recommending a permanent plan of adoption. In May, the court agreed to continue the section 366.26 hearing in light of the changed recommendation so the parents could file section 388 modification petitions. Both parents filed section 388 petitions. Marianne sought to vacate the section 366.26 hearing, place the children with the parents, and transfer the case to the parents' county of residence. Robert sought reinstatement of reunification services for both parents. Each parent subsequently filed a motion under Code of Civil Procedure section 128, subdivision (a)(8) seeking to vacate the referral hearing and hold a new hearing as we directed in appeal D040132 and appeal D040859 under the court's general power to amend and control its processes and orders so as to make them conform to law and justice. Subsequently, the Department filed an addendum report indicating it was recommending a permanent plan of guardianship based on its agreement with the parents.
At the August 2004 section 366.26 hearing, the court denied the Code of Civil Procedure section 128, subdivision (a)(8) motions on the ground that the Department was again recommending guardianship and denied Robert's section 388 modification petition.[3] The court then terminated parental rights after finding the children were adoptable and none of the section 366.26, subdivision (c)(1) exceptions applied.

DISCUSSION

I.

A.
The parents argue the Department should be equitably estopped from asserting *219 they did not meet their burden to show the section 366.26, subdivision (c)(1)(A) exception applied.[4]
In order to find equitable estoppel, four elements must be present: (1) the Department must be apprised of the facts; (2) the Department must intend that its conduct shall be acted upon, or must so act that the parents had a right to believe it was so intended; (3) the parents must be ignorant of the true state of the facts; and (4) the parents must rely upon the conduct to their injury. (Guardianship of Ethan S. (1990) 221 Cal.App.3d 1403, 1415-1416, 271 Cal.Rptr. 121.) Further, for the doctrine to apply, the parents' reliance must be reasonable. (Phillippe v. Shapell Industries (1987) 43 Cal.3d 1247, 1262, 241 Cal.Rptr. 22, 743 P.2d 1279; Morrison v. California Horse Racing Bd. (1988) 205 Cal.App.3d 211, 218, 252 Cal.Rptr. 293.)
Here, the parents could not reasonably rely on the court following the Department's recommendation for guardianship. They have been aware since the jurisdictional hearing that the court could terminate parental rights if they failed to reunify. At the hearing in which the Department first indicated it would limit its recommendations to guardianship, the children's counsel said he wanted the children's adoptability to be assessed, making clear the children would press for termination of parental rights. At that same hearing, the court told the parents it would consider terminating parental rights at the section 366.26 hearing.[5] Moreover, they have "always" known the grandparents wanted to adopt the children. Because the parents knew the children wanted a permanent plan of adoption and the court was considering terminating parental rights, any reliance by the parents on their belief that the court would follow the Department's recommendation of guardianship was not reasonable.
Moreover, "`[a]lthough equitable estoppel may apply to government actions where justice and right so require, "estoppel will not be applied against the government if the result would be to nullify a strong rule of policy adopted for the benefit of the public [citations] or to contravene directly any statutory or constitutional limitations. [Citation.]" [Citations.]'" (Emma Corp. v. Inglewood Unified School Dist. (2004) 114 Cal.App.4th 1018, 1028-1029, *220 8 Cal.Rptr.3d 213.) The public policy here is the protection of abused and neglected children (§ 300.2) and the children's need for stability and permanence (In re Marilyn H. (1993) 5 Cal.4th 295, 309, 19 Cal.Rptr.2d 544, 851 P.2d 826).
The Department is an arm of the government and its duty is to protect the best interests of dependent children. (In re Danielle W. (1989) 207 Cal.App.3d 1227, 1234, 255 Cal.Rptr. 344.) It also has a duty to apprise the court of all relevant facts and circumstances when issuing reports. (In re John F. (1994) 27 Cal.App.4th 1365, 1377-1378, 33 Cal.Rptr.2d 225.) Thus, regardless of its agreement with the parents, the Department had a duty to provide a report to the court assessing the children's adoptability.[6] If, in performing that analysis, the Department concluded its earlier assessment that guardianship was the most appropriate permanent plan was no longer valid, it had a duty to so inform the court. Adhering to a recommendation of guardianship based on the Department's agreement with the parents would subordinate the children's best interests to that agreement and thereby nullify a strong rule of public policy. The equitable estoppel doctrine is inapplicable.

B.
The parents assert the judgment should be reversed because the Department engaged in extrinsic fraud.[7] However, the parents did not raise the issue of fraud in either their section 388 modification petitions or their Code of Civil Procedure section 128, subdivision (a)(8) motions. We see no reason to deviate from the usual rule that when a parent does not raise an issue in the trial court, he or she is precluded from raising the issue on appeal. (In re S.B. (2004) 32 Cal.4th 1287, 1293, 13 Cal.Rptr.3d 786, 90 P.3d 746.) That is particularly true when, as here, the issue requires a finding of fact. (See Guido v. Koopman (1991) 1 Cal.App.4th 837, 843, 2 Cal.Rptr.2d 437 ["The existence of actual fraud is always a question of fact."].) To resolve the issue of whether the Department acted fraudulently, we would have to engage in factfinding, which is not the function of this court. (Tupman v. Haberkern (1929) 208 Cal. 256, 262-263, 280 P. 970 [findings of fact are the sole province of the trial court].) The parents have waived their right to argue the Department committed fraud when it initially recommended guardianship.

C.
The parents assert the court erred in denying Marianne's Code of Civil Procedure section 128, subdivision (a)(8) motion.

1.
Preliminarily, we address the children's contention that Code of Civil Procedure section 128 does not apply to juvenile dependency proceedings. Dependency proceedings are special proceedings governed by their own rules and statutes. (§ 300 et seq.; Cal. Rules of Court, rule 1440 et seq.) Statutes applicable to civil cases are not applicable to dependency actions unless expressly made so. (In re Daniel S. (2004) 115 Cal.App.4th 903, 911, 9 Cal.Rptr.3d 646.) Because there is no *221 provision in the Welfare and Institutions Code adopting Code of Civil Procedure section 128, subdivision (a)(8) for juvenile dependency court proceedings, the section is inapplicable here.[8] However, because the children did not argue below that a Code of Civil Procedure section 128, subdivision (a)(8) motion was not allowed in dependency proceedings, they are estopped from claiming the issue was not in controversy. (See George Arakelian Farms, Inc. v. Agricultural Labor Relations Bd. (1986) 186 Cal.App.3d 94, 104, 230 Cal.Rptr. 428.) Thus, we will examine whether the court correctly denied the motion.

2.
Under the first sentence of Code of Civil Procedure section 128, subdivision (a)(8), the court has the power to "amend and control its process and orders so as to make them conform to law and justice." We review the denial of a Code of Civil Procedure section 128, subdivision (a)(8) motion for an abuse of discretion. (See Chambers v. Superior Court (1981) 121 Cal.App.3d 893, 903, fn. 7, 175 Cal.Rptr. 575.)
The Department and the children assert there is no abuse of discretion because the Department stood by its recommendation for guardianship. The Department took no position at the section 366.26 hearing and has not asserted on appeal that the court correctly found the section 366.26, subdivision (c)(1)(A) exception did not apply.[9] However, before the hearing, the Department filed an assessment recommending adoption. That action did not require the court to grant the Code of Civil procedure section 128, subdivision (a)(8) motion because the Department had been ordered to file an assessment of the children's adoptability. Further, as discussed in part II.A., infra, the Department was statutorily obligated to give the court all the information about the children, regardless of any agreement made with the parents.
The Department also filed a trial brief that was clearly a request for the court to terminate parental rights.[10] There was no statutory duty compelling the Department to file this brief and it certainly violated *222 the spirit of the Department's agreement to recommend guardianship. However, this fact did not compel the court to grant the Code of Civil Procedure section 128, subdivision (a)(8) motion. Notwithstanding the Department's agreement to recommend guardianship, when the Department first told the court in November 2003 it would recommend guardianship, the parents were told the court was considering terminating parental rights and the children intended to request termination of parental rights. Knowing this, the parents could not assume the court would follow the Department's recommendation. Their decision not to litigate the issues as specified in our remand in appeal D040132 was apparently a calculated risk that failed. This did not mean the referral order was not just or that the court had to give them another opportunity to litigate those issues. The court did not abuse its discretion in denying Marianne's Code of Civil Procedure section 128, subdivision (a)(8) motion.

D.
The parents assert the judgments should be reversed because the court did not advise them of the possible consequences of waiving their rights to a hearing on the merits when they submitted at the referral hearing. Although they have provided us with several cases that discuss knowing and voluntary waiver of constitutional rights in criminal proceedings, none of those cases addressed the issue in the context of dependency matters. The parents have cited no authority requiring the court to determine whether a parent's choice to submit at a referral hearing is knowing and voluntary.[11] To the contrary, the court has a duty to explain the parents' rights to a hearing only at the jurisdictional hearing. (Cal. Rules of Court, rules 1412(j), 1449(b).)
Even if we assume the court had an obligation to tell the parents of the consequences of submitting at the referral hearing, the court effectively did so by stating it would consider terminating parental rights at the section 366.26 hearing. This statement was a clear warning that waiving the right to a hearing on possibly meritorious issues could have significant consequences in the future. The court did not err by not explicitly informing Marianne of the consequences of not having a hearing.

II.
The parents contend the court erred in terminating parental rights because the Department provided the court with no information about the children's feelings regarding termination of the parents' rights.[12]
Section 366.26, subdivision (h) requires the court at the selection and *223 implementation hearing to "consider the wishes of the child." This evidence may be presented by direct formal testimony in court, informal direct communication with the court in chambers, reports prepared for the hearing, letters, telephone calls to the court, or electronic recordings. (In re Diana G. (1992) 10 Cal.App.4th 1468, 1480, 13 Cal.Rptr.2d 645.) However, the court must only consider the child's wishes to the extent those wishes are ascertainable. (In re Amanda D. (1997) 55 Cal.App.4th 813, 820, 64 Cal.Rptr.2d 108.) A child may not be able to understand the concept of adoption. (In re Juan H. (1992) 11 Cal.App.4th 169, 173, 13 Cal.Rptr.2d 716.) Here, at the time of the hearing, Jacob was seven and Joshua was five. We infer the social worker attempted to discuss the concept of adoption with the children because she said neither understood the concept. She also asked them with whom they wanted to live and they said they wanted to live with Marianne. Thus, the social worker provided the information she had about the children's wishes to the court.
Moreover, although the court is obligated to consider a child's best interests at the section 366.26 hearing, the court need not follow the child's wishes unless he or she is over the age of 12. (§ 366.26, subds.(c)(1)(B), (h).) Thus, even though young children such as Jacob and Joshua may want to live with Marianne, doing so may not be in their best interests and the court may nonetheless terminate parental rights. The parents have not demonstrated reversible error.

III.[*]

IV.
Although not an issue raised by the parties, we must comment on the apparent misunderstanding of the Imperial County Superior Court, the Department, and the parents' attorneys that dependency proceedings are taken against parents. We do so because this misunderstanding has permeated this entire record and has caused unnecessary procedural difficulties and delays and we are aware of other cases where this misunderstanding has caused problems on appeal. We want to prevent future problems that could require reversal.
The purpose of dependency proceedings is to protect children. (§ 300.2.) Dependency proceedings are civil in nature and are designed to protect the child, not to punish the parent. (In re Malinda S. (1990) 51 Cal.3d 368, 384, 272 Cal.Rptr. 787, 795 P.2d 1244.) Therefore, the court takes jurisdiction over children (§ 300); it does not take jurisdiction over parents. Moreover, the court has jurisdiction over the children if the actions of either parent bring the child within one of the statutory definitions in section 300. (In re Alysha S. (1996) 51 Cal.App.4th 393, 397, 58 Cal.Rptr.2d 494.) The court gains jurisdiction over a parent when the parent is properly noticed. (In re Daniel S., supra, 115 Cal.App.4th at p. 916, 9 Cal.Rptr.3d 646.)
Consequently, the court here erred at the jurisdictional hearing when it made true findings on the allegations against only Marianne, and held another jurisdiction hearing as to Robert two weeks later. If the allegations against Marianne were true, it was irrelevant whether the allegations against Robert were also true. Further error occurred when the court followed the Department's request to dismiss the petition as to Robert *224 in March 2001. Regardless of whether Robert was responsible for the acts that brought the children before the juvenile court, that court cannot dismiss the petition against Robert because the petition is not brought against him; it is filed on behalf of the children. Assuming the court believed Robert was not responsible for the actions that brought the children within the scope of section 300 (and the parents were not living together), the court could have considered whether he was a nonoffending noncustodial parent who wanted custody under section 361.2.
The errors continued when the Department filed a new section 300 petition alleging the children were at risk because Robert was convicted of violating a restraining order. This was unnecessary and improper; the court already had jurisdiction over the children, had already declared them to be dependents, and had already removed them from parental custody. If the Department believed it was important to obtain an additional basis of jurisdiction over the children it should have filed a subsequent petition under section 342. (Kimberly R. v. Superior Court (2002) 96 Cal.App.4th 1067, 1075, 117 Cal.Rptr.2d 670.)
The next error was to hold two 12-month review hearings, two months apart. We recognize that 12-month review hearings are often continued and do not occur exactly 12 months after the child's removal. Nevertheless, there should be only one 12-month review hearing and its date is determined by the date the child enters foster care. (§ 366.21, subd. (f).) Thus, the court should not hold a 12-month review hearing as to each parent; it should hold one 12-month review hearing. If one parent is unable to proceed, the court should have continued the hearing.
The court's next error occurred when it terminated Marianne's services and dismissed the matter as to her in March 2003. As discussed above, the court takes jurisdiction over the children. Thus, to terminate jurisdiction, it dismisses the petition; it does not dismiss the parents from the petition. (See § 364, subd. (c).) If Marianne was ready to assume custody without supervision, the court should have dismissed the petition and transferred the matter to family court to resolve any lingering custody issues. (In re Jennifer R. (1993) 14 Cal.App.4th 704, 714, 17 Cal.Rptr.2d 759.) Further, once the court dismissed the petition, it had no jurisdiction over the children unless the Department filed a new section 300 petition.
The next error occurred when, following our remand, the court scheduled a 12-month review hearing for Robert and an 18-month review hearing for Marianne. It did so in response to our remands from appeal D040132 and appeal D040859, but because we ordered a new 12-month review hearing, and the date of that hearing is tied to the children's placement in foster care (§ 366.21, subd. (f)), the court should have scheduled one 12-month review hearing, not different hearings for each parent.
The last error we shall discuss occurred when the Department filed a section 387 supplemental petition in July 2003. Section 387 petitions are appropriate when the Department seeks to modify a previous order placing a dependent child with a parent. (Kimberly R. v. Superior Court, supra, 96 Cal.App.4th at p. 1075, 117 Cal.Rptr.2d 670.) However, a necessary prerequisite to file a section 387 modification petition is jurisdiction over the children. (Ibid.) Here, the court had terminated its jurisdiction over the children several months earlier. Thus, the Department should have filed a new section 300 *225 petition, not a section 387 supplemental petition.[16]
None of these errors warrant reversal here. However, we urge the court and the Department to reexamine how they address dependency cases so that errors like these do not require reversal in the future.

DISPOSITION
The judgments are affirmed.
WE CONCUR: BENKE, Acting P.J., and HALLER, J.
NOTES
[1] Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part III.
[2] All statutory references are to the Welfare and Institutions Code unless otherwise specified.
[3] It is not clear why the court did not make a separate ruling as to Marianne's section 388 modification petition, but instead assumed she had joined Robert's petition. However, because she has not appealed on that ground, we do not address the issue.
[4] The parents do not clearly explain what they want the Department to be estopped from doing. To the extent they are complaining about the conduct at the hearing or in the briefing to this court, the Department did not assert at the section 366.26 hearing or in its respondents' brief that the section 366.26, subdivision (c)(1)(A) exception was inapplicable. We infer the parents are complaining the Department should have been estopped from filing the assessment report recommending adoption and the trial brief that indicated adoption was the preferred permanent plan. However, the parents did not object on the grounds of estoppel to the filing of either document, thereby waiving their right to complain here that the Department was estopped from filing them. (People v. Watkins (1959) 175 Cal.App.2d 182, 184, 345 P.2d 960.)
[5] The court is never bound by a social services department's recommendation for guardianship. (In re Jason E. (1997) 53 Cal.App.4th 1540, 1547, 62 Cal.Rptr.2d 416.) The parents argue they had no reason to be aware of this fact. Although this may be true, their counsel has a duty to undertake reasonable research to ascertain relevant legal principles and make informed decision as to an appropriate course of conduct based on an intelligent assessment of the problem. (Janik v. Rudy, Exelrod & Zieff (2004) 119 Cal.App.4th 930, 937, 14 Cal.Rptr.3d 751.) In the absence of any evidence in the record showing the parents' respective counsels did not discuss the issue with the parents, we assume counsel knew the court was not bound by its agreement and performed their regular duties to inform their clients of that fact. (Evid.Code, § 664.)
[6] The Department also had to assess the children's adoptability because the court ordered it to do so.
[7] The parents also assert that the judgment should be reversed under the doctrine of mistake. However, because they have not supported that argument with authority or citation to the record, we disregard it. (Sporn v. Home Depot USA, Inc. (2005) 126 Cal.App.4th 1294, 1303, 24 Cal.Rptr.3d 780.)
[8] In re Rashad H. (2000) 78 Cal.App.4th 376, 92 Cal.Rptr.2d 723 does not compel a different conclusion. In that case, the parties requested a stipulated reversal in the appellate court pursuant to the procedure provided in the second sentence of Code of Civil Procedure section 128, subdivision (a)(8). There is nothing in the statutory scheme or the California Rules of Court preventing the appellate courts from using the stipulated reversal procedure and nothing in this opinion should be read to foreclose the appellate court from accepting stipulated reversals.

The parents, here, however, were asking the trial court to amend and control its processes and orders so as to make them conform to law and justice under the first sentence of Code of Civil Procedure section 128, subdivision (a)(8). The Legislature has not specifically indicated the trial courts have that authority and has provided section 388 as a method to amend prior orders. Thus, the parents should have raised those issues in their section 388 modification petitions.
[9] Contrary to the parents' assertion, the Department's argument in its respondent's brief that the assessment report is adequate does not show the Department "reneged" on its agreement to recommend guardianship. The Department never agreed to say the children were not adoptable; it agreed guardianship was the appropriate permanent plan because section 366.26, subdivision (c)(1)(A) applied. The question of whether a child is adoptable is a different question than whether one of the exceptions to terminating parental rights applies.
[10] The trial brief asserted adoption was the preferred permanent plan, guardianship was easily revoked, and the court was not bound by the agreement between the Department and the parents.
[11] Marianne places great weight on the court's statement that her Code of Civil Procedure section 128 motion might have merit because her waiver was not knowing. However, the court's statement is irrelevant if it had no duty to apprise her of the consequences of submitting at the hearing.
[12] The children assert the parents have waived their right to argue the assessment report was deficient. To the extent the parents are arguing substantial evidence does not support the court's finding of adoptability, they have not waived that argument. (In re Brian P. (2002) 99 Cal.App.4th 616, 623, 121 Cal.Rptr.2d 326.) However, to the extent the parents are challenging the adequacy of the assessment report, they have waived that argument by not challenging its adequacy in the juvenile court. (In re Crystal J. (1993) 12 Cal.App.4th 407, 411, 15 Cal.Rptr.2d 613; In re Brian P., supra, 99 Cal.App.4th at p. 623, 121 Cal.Rptr.2d 326.) Because it is not clear whether they are challenging the assessment report or the court's findings, we will address the issue on its merits.
[*] See footnote 1, ante.
[16] Any error in this regard is harmless because the court applies the same standards of proof in making true findings and removing children from parental custody on a section 387 petition that it does on a section 300 petition. (Kimberly R. v. Superior Court, supra, 96 Cal.App.4th at p. 1077, 117 Cal.Rptr.2d 670.)