Filed 6/24/14  In re Alice Z. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re ALICE Z., a Person Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>MICHAEL Z.,<br><br>    Defendant and Appellant. | G049744<br><br>(Super. Ct. No. DP022387)<br><br>O P I N I O N |

        Appeal from an order of the Superior Court of Orange County, Gary Bischoff, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 1.)  Affirmed.

        Linda Rehm, under appointment by the Court of Appeal, for Defendant and Appellant.

        Nicholas S. Chrisos, County Counsel, Karen L. Christensen and Aurelio Torre, Deputy County Counsel, for Plaintiff and Respondent.

        No appearance for the Minor.

## INTRODUCTION

Michael Z., father of minor Alice Z., appeals from an order of the juvenile court maintaining jurisdiction and supervision over Alice after the court found that Michael and Alice's mother, Tara Z., had not made sufficient progress in their case plan to warrant an end to supervision. Police officers detained three-year-old Alice – and arrested her parents – after the officers found Alice living in appalling filth. Her parents regained custody of Alice after about a month, but under close supervision by Orange County Social Services Agency (SSA). Over the ensuing two years, Michael and Tara attended classes and counseling sessions, endeavoring both to resolve problems in their marriage and to learn proper parenting skills. The court then had to determine whether to keep the family under SSA supervision or to close the case.

After a hearing in February 2014, the court found the parents were taking better care of Alice and their home only because they knew SSA could check up on them at any time. Without SSA's oversight, the court concluded, Alice's living conditions would rapidly deteriorate until they were back where they were when police officers had found her naked and filthy nearly two years before. Accordingly, the juvenile court ordered SSA to continue to supervise the family.

We affirm the order. Substantial evidence supported the court's determination that supervision is still required to ensure Alice's safety and well-being. The trial court could reasonably conclude Michael and Tara have not internalized the minimum standards of housekeeping necessary to maintain a healthy and safe living space for their daughter. Its determination SSA needs to keep an eye on them still, for Alice's sake, is not one we can overturn.

## FACTS

Anaheim police officers picked Alice up in March 2012, after responding to an anonymous request for a welfare check. As the officers arrived at the residence, Alice – three years old, naked, filthy, with matted hair – unlocked and opened the door of her

2

parents' condo and went outside.  No one responded when the officers called out several times.  The condo smelled of animal urine and spoiled food; the tiles on the entry floor were so dirty that the officers' boots stuck to them.  The entire downstairs was cluttered and filled with trash.  Upstairs presented the same grime and clutter, with the addition of slimy sinks and toilets, partially full beer bottles in one bedroom, and razors in one of the showers.  When Michael finally showed up (he appeared to have been hiding upstairs), he blamed Alice and his wife, Tara, for the mess.  Then Tara arrived, claiming the house had been clean four days before, and Alice was responsible for its present condition.  As the officers pointed out, it would have taken far more than four days to attain that level of disarray, and a three-year-old child could not possibly have created, for example, the spoiled food in the refrigerator or the beer bottles in the bedroom.

Michael and Tara were arrested, and Alice was taken to Orangewood.  She was placed temporarily in foster care, then with an uncle.[1]  In May 2012, Alice was released to her parents' custody under the Conditional Release to Intensive Supervision Program (CRISP).  The specific CRISP conditions for Michael and Tara were (1) refrain from engaging in domestic violence;[2] (2) maintain a clean and safe home; (3) demonstrate adequate parenting skills; and (4) participate in services.

The initial reports of Michael's and Tara's participation in CRISP were quite promising.  The parents attended classes and kept the home cleaned up.  Their enthusiasm waned, however, and old habits reasserted themselves.  An unannounced visit in late November 2012 revealed unsanitary living conditions, with clutter on the floor and a sink full of dirty dishes.  Alice, who was by this time nearly four years old, was wearing only a diaper, despite the cold weather.  In addition, Michael and Tara were having

[1]    SSA visited the condo on April 2, 2012, three days after Alice's detention.  The condo was still filthy and uninhabitable.  A visit about two weeks later revealed some improvement, but not much.

[2]    In June 2011, Michael struck Tara in the face several times and threw something at her.  He had engaged in similar violence in January 2010.  At that time, the investigating officer observed the home to be filthy.  In July 2011, Tara telephone SSA to say she was moving to Ventura.  Michael could be heard in the background threatening to kill her.  Alice reportedly witnessed this incident.

3

marital problems, which they tried to address in therapy, both individually and as a couple. The social workers attributed Alice's defiant, aggressive, and out-of-control behavior to a combination of the tensions between Michael and Tara and her parents' inability to discipline her when she misbehaved.

In late December, the family moved to an apartment. By January 2013, the new place was beginning to resemble the old home in dirt and clutter. During a January visit, Michael began yelling at the social worker, insisting SSA was harassing the family. During a visit later in January, the social worker observed that Michael had been drinking, and he refused to speak to her. By July, the social worker was observing both mutual hostility between the parents and some improvement in keeping the apartment clean, although for some reason the parents still could not bring themselves to vacuum the carpet. Alice herself was kept better groomed. Whatever housekeeping deficiencies the visiting social worker pointed out, Tara had a ready excuse. The social worker was also concerned that Alice was not getting necessary medical and dental checkups.[3] The social worker requested that the case remain open, because without SSA supervision, the home situation would deteriorate even further.[4]

At the six-month review hearing in September 2013, the parties stipulated to an order allowing SSA to have regular unannounced visits, which would taper off if the parents showed they could keep the home clean. In addition, SSA could take pictures during visits and could require the parents to attend therapy sessions if they did not maintain the home.

As of January 2014, the parents had still not provided SSA with evidence that Alice had received all her immunizations or the dental checkup she needed. The January status report noted the parents' pattern of making promises, then making excuses

---

[3] As of September, Alice had not been seen by a dentist.

[4] The social worker was particularly concerned about Michael, who had not completed the parenting programs to which he had been referred. She could not observe his behavior with Alice, because he stayed in his room during SSA visits.

for not following through.  For example, Tara began promising to enroll Alice in pre-school in January 2013; as of December 2013, she had still not been enrolled.[5]  The same pattern obtained with respect to medical and dental care for Alice and for dealing with the progressively deteriorating carpet in the apartment.

On February 13, 2014, the juvenile court held a review hearing to determine whether to continue jurisdiction.  The social worker, Tara, and Michael testified.  Along with SSA reports, two sets of photographs were admitted into evidence.  One set, introduced by Michael as having been taken on February 2, 2014, showed the apartment in a preternatural state of tidiness (although it did not show the condition of the carpet).  The other set was taken by Alice's counsel's investigator, who made an unannounced visit on the afternoon of January 9.  This set showed Alice answering the door alone and letting the investigator in, while Tara was photographed sleeping, or passed out, or otherwise occupied on the floor in another room.  The apartment was once again in chaos.  Michael identified these photographs as representing the interior of his apartment, but claimed that the place had been clean when he left for work in the morning and was reduced to this state by one of Alice's playmates.  Tara gave conflicting accounts of what she was doing on the floor when the investigator called and whether Alice had once again been allowed to answer the door on her own.

The juvenile court found that continued supervision was necessary.  The court's decision was heavily influenced by the photos of the apartment on January 9, which it believed represented its normal state, and the spectacle of Tara sleeping or whatever she had been doing instead of tending to Alice while Alice opened the apartment door to an unknown person.  The court was also troubled by Michael's refusal to communicate with the visiting social worker and the number of times the social

---

[5]  Alice started pre-school on January 8, 2014.  She went to the dentist on January 7, 2014, but would not sit still for X-rays or a cleaning.  A visual inspection of her teeth showed deep cavities requiring root canals and crowns.  Alice was about to turn five years old.

workers had unsuccessfully tried to make unannounced visits.[6] The court concluded, "[I]f I were to terminate this case today, it wouldn't be two months before this home was in such a condition that it would require removal of the child from the home because there wouldn't be anybody there checking on it. I think that the home has been maintained in the condition that it's in only because the parents knew that somebody would be coming in on an unannounced basis and even then there were problems with maintaining the house in the proper condition."

Michael has appealed from this order on the ground of insufficient evidence. Tara has not appealed.

## DISCUSSION

The statute governing this case is Welfare and Institutions Code section 364, subdivision (c), which provides: "After hearing any evidence presented by the social worker, the parent, the guardian, or the child, the court shall determine whether continued supervision is necessary. The court shall terminate its jurisdiction unless the social worker or his or her department establishes by a preponderance of evidence that the conditions still exist which would justify initial assumption of jurisdiction under Section 300, or that those conditions are likely to exist if supervision is withdrawn. Failure of the parent or guardian to participate regularly in any court ordered treatment program shall constitute prima facie evidence that the conditions which justified initial assumption of jurisdiction still exist and that continued supervision is necessary."[7]

"In juvenile cases, as in other areas of the law, the power of an appellate court asked to assess the sufficiency of the evidence begins and ends with a determination

---

[6] The court suspected that the parents, or one of them, were actually home when the social worker appeared but pretended to be away so as not to let her in to observe the apartment.

[7] We should point out that Tara's failure to appeal renders Michael's appeal moot. As the court pointed out in *In re Joshua G.* (2005) 129 Cal.App.4th 189, the court assumes jurisdiction over the child, not over the parents. To terminate jurisdiction, the court dismisses the petition, not the parents. (*Id.* at p. 203.) The court could not dismiss the petition as to Michael while maintaining it as to Tara. Therefore even if we were to find insufficient evidence as to Michael, Alice would still be under the court's jurisdiction and supervision, because Tara did not challenge the court's order, and she and Michael reside together.

6

as to whether or not there is any substantial evidence, whether or not contradicted, which will support the conclusion of the trier of fact. All conflicts must be resolved in favor of the respondent and all legitimate inferences indulged in to uphold the verdict, if possible. Where there is more than one inference which can reasonably be deduced from the facts, the appellate court is without power to substitute its deductions for those of the trier of fact." (*In re Katrina C.* (1988) 201 Cal.App.3d 540, 547.) We examine the entire record to determine whether substantial evidence – reasonable, credible, and solid evidence – supports the juvenile court's findings. (*In re N. S.* (2002) 97 Cal.App.4th 167, 172.)

SSA bore its burden to produce substantial evidence that the conditions causing Alice's detention in March 2012 are likely to exist if its supervision is withdrawn. The documented state of the apartment on January 9, 2014, alone would justify the court's fears that once SSA was out of the picture, Alice would soon be living again in squalor. The parents' pattern of promises, excuses, and failures to deliver rendered any reliance on them to remedy their shortcomings on their own far too optimistic. Michael's hostility toward the entire process, and his refusal to engage with visiting social workers, likewise supported the court's determination he has not made the necessary progress to go it alone.

We do not reweigh evidence. SSA presented reasonable, credible, and solid evidence that the problems resulting in the court's jurisdiction over Alice have not been resolved and are likely to recur once SSA supervision is withdrawn. The trial court was entitled to act on this evidence, and we have no basis for second-guessing it.

## DISPOSITION

The juvenile court's order continuing supervision of Alice Z. under Welfare and Institutions Code section 364, subdivision (c), is affirmed.


BEDSWORTH, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


MOORE, J.