Filed 9/5/14  In re Mariana G. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re MARIANA G., a Person Coming Under the Juvenile Court Law. | B253546<br>(Los Angeles County<br>Super. Ct. No. CK44843) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>      Plaintiff and Respondent,<br><br>      v.<br><br>OSCAR G.,<br><br>      Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County. Robert Draper, Judge.  Affirmed.

Nancy O. Flores, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, Dawyn R. Harrison, Assistant County Counsel, Tyson B. Nelson, Deputy County Counsel, for Plaintiff and Respondent.

_____

Oscar G. (Father) appeals from the dependency court's order finding jurisdiction over his two children. We find that the order was supported by substantial evidence, as Father and Maria G. (Mother) engaged in acts of domestic violence in the presence of their children.

### FACTUAL AND PROCEDURAL BACKGROUND

This matter came to the attention of the Department of Children and Family Services (DCFS) on May 11, 2013. On that date, DCFS received a referral that Mariana G. (then age 10) and Luis. G. (then age 8) were left alone in their home without adult supervision until Mother returned home from work in the late evening.

A social worker interviewed Mother, who denied having a criminal record, but reported that Father's girlfriend obtained a restraining order against her following a physical altercation in August 2012. Mother explained the incident to the social worker, saying that she had keys to Father's residence because they had recently lived together. She entered Father's apartment to pick up the children for a visit and found Luis sleeping in the same bed as Father and his girlfriend, who was naked. Mother pulled Father's girlfriend's hair until Father stopped her. The children were both in the room during the incident.

Mother further reported that when she lived with Father, she was pushed, yelled at, and insulted by Father in front of the children. According to Mother, in December 2011, Father pushed her and threw a bottle at her head. In addition, in November 2012, Father entered her home, tried to grab her breasts, and ripped her shirt and bra. She shoved Father away, but he pushed her onto the bed. She tried to kick him, and he grabbed her leg and twisted it, causing her a great deal of pain. The children witnessed the incident and tried to stop it. Mother went to the hospital for treatment and filed a report with the police. She also filed for a restraining order against Father, which was granted; the order allowed for peaceful contact to facilitate visitation with the children.

Mother became upset when asked about leaving the children alone, saying that she had to work and that Father did not provide financial support. She claimed that a

2

neighbor frequently stopped by to check on the children. Mother got angry when the social worker suggested that Father and his relatives care for the children while she was at work, saying that Father was more interested in seeing other women than in seeing the children and that his family behaved inappropriately, including an aunt who was promiscuous.

Father was also interviewed. He stated he had a criminal record for domestic violence due to problems with Mother. He recounted the incident involving his girlfriend and Mother, explaining that Mother entered the house through a window. She went into the bedroom where Father, the children, and Father's girlfriend were sleeping (clothed) and tried to attack the girlfriend, until Father stopped her. The police were called, and they asked Mother to leave with the children.

Father claimed that Mother had always been aggressive. He said that she had previously threatened him with a knife had tried to run him over with a car. Father denied making inappropriate physical contact with Mother. According to Father, Mother made it difficult for him to see the children, and when he was allowed to care for the children, Mother would often show up at his relative's house yelling.

The social worker also interviewed Mariana and Luis. Mariana reported that Father had thrown Mother onto bicycles kept in the living room. In addition, Mariana saw Father grab and pull Mother's shirt, causing it to rip. Father then twisted Mother's leg and Mariana tried to stop him. When asked about the incident between Mother and Father's girlfriend, Mariana said she did not see what happened because she was asleep. She said she had never seen Father's girlfriend naked. Mariana said that she was not spanked by either Mother or Father, but that Father had once pulled her hair and hit her with an open hand when she did not want to get up for school.

Luis also denied seeing the incident between Mother and the girlfriend, stating that he was taken to another room by relatives. He acknowledged sleeping in the same bed with Father and his girlfriend, but stated they were all clothed. Luis claimed that Father did not visit, and that Mother did not want him and his sister to see Father. Luis said he did not want to see Father and wanted to stay with Mother. Luis saw Father push Mother

3

on one occasion but had never seen him hit her. When Luis got in trouble, Father hit him with a belt on his buttocks over his pants.

Various relatives of Father were also interviewed. They described Mother as aggressive and stated that she was generally the instigator of arguments with Father.

DCFS held a team decision meeting with Mother on June 5, 2013. Mother was asked about leaving the children unattended, domestic violence in the presence of the children, incidents between Mother and Father's girlfriend, and Mother's controlling behavior, including not letting the children visit Father and turning Luis against Father. Mother did not adequately respond to any of these questions and instead directed the conversation to how Father did not care for the children. Mother reluctantly admitted that her actions were inappropriate but said she did not regret them.

A separate team decision meeting was held with Father on June 6, 2013. Father stated that he had delivered food to the children when they were left alone on May 11, 2013, but admitted that he then left them unattended. He agreed that conflict with Mother was negatively impacting the children. Father said he was able to care for the children more than Mother allowed, and that his family could also watch them.

DCFS filed a section 300 petition[1] on June 18, 2013. The petition did not seek detention; rather, DCFS requested that the children remain in Mother's home, with Father having regular, unmonitored visitation. The dependency court ordered the children released to Mother with Father to have unmonitored visits. The parents were ordered not to make disparaging remarks about each other or about each other's relatives or friends in the presence of the children.

Mother was interviewed again on June 27, 2013. She stated that Father had been physically abusive toward her more than once. In addition to the incident where he pushed her into the bicycles, and the incident in which he hurt her leg, Father had poured

---

[1]     Unless otherwise noted, all statutory references are to the Welfare and Institutions Code.

beer on her, thrown the bottle at her head, and then pushed her. Mother denied that she had ever threatened Father with a knife or tried to run him over.

Father was re-interviewed on July 3, 2013. He stated that he had never hit the children with a belt but had occasionally spanked Luis on his bottom and hit the children on the hand or shoulder when they misbehaved. Father acknowledged that at certain points his relationship with Mother involved domestic violence. According to Father, most of the verbal disputes were caused by Mother's jealousy and her attempts to provoke him. Regarding the incident involving Mother's injured leg, Father said that he had gone to the home to use the bathroom and Mother tried to kick him out. She ripped his shirt and he then ripped her shirt in an attempt to protect himself. Mother tried to kick him and he grabbed her leg, causing her to fall and get hurt. Father also stated that on one occasion he was drinking a beer when Mother tried to grab it from his hand, causing him to drop the beer and spill some on Mother. In addition, Father admitted that Mother had fallen on some bikes during an altercation, but stated it was because Mother was trying to hold onto him so that he could not leave the residence. Father brought up an additional incident involving his girlfriend, stating that Mother threw keys at her face, requiring her to get stitches. Father also stated that he was aware Mother left the children home alone while she was at work, but said he could not take care of them because she refused to let him see them.

On November 20, 2013, Mother pled no contest to an amended section 300 petition.

Father's contested adjudication hearing occurred on December 12, 2013. He testified that he was participating in a group counseling domestic violence program in which he learned about issues such as properly reacting to arguments and the effects of exposing children to domestic violence. Father said that he did not remember how many occasions his children were exposed to violence between him and Mother, and that he tried to avoid it, but it had happened on more than one occasion. He admitted that the children saw him push Mother, but said it was because she was kicking him. At the time of the hearing, he had not lived with Mother for nearly a year.

5

Father further testified that he was abiding by the restraining order Mother had against him. He denied ever striking Luis with a belt. He admitted spanking Luis on his bottom, and said he may have spanked Mariana's arm and pulled her hair one time. Finally, when asked if he intended to reunify with Mother, Father said, "Not right now."

The dependency court sustained the amended section 300 petition under subdivisions (a) and (b), finding that there was sufficient evidence of domestic violence, and that such violence placed the children at risk of harm. The court further declared the children dependents of the court, kept them in parental custody, and ordered that Father complete a 52-week domestic violence program.

Father timely appealed.

## DISCUSSION

Father contends that there was insufficient evidence to sustain the petition against him. He argues that the dependency court should not have found jurisdiction under either section 300, subdivision (a) or subdivision (b),[2] because there was not a substantial risk that the children would suffer serious physical harm.

We review the dependency court's findings for substantial evidence. "In juvenile cases, as in other areas of the law, the power of an appellate court asked to assess the sufficiency of the evidence begins and ends with a determination as to whether or not there is any substantial evidence, whether or not contradicted, which will support the

---

[2] Section 300, subdivisions (a) and (b) state, in pertinent part: "300. Any child who comes within any of the following descriptions is within the jurisdiction of the juvenile court which may adjudge that person to be a dependent child of the court: [¶] (a) The child has suffered, or there is a substantial risk that the child will suffer, serious physical harm inflicted nonaccidentally upon the child by the child's parent or guardian. For the purposes of this subdivision, a court may find there is a substantial risk of serious future injury based on the manner in which a less serious injury was inflicted, a history of repeated inflictions of injuries on the child or the child's siblings, or a combination of these and other actions by the parent or guardian which indicate the child is at risk of serious physical harm. . . . [¶] (b) The child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child . . . ."

6

conclusion of the trier of fact." (*In re Katrina C.* (1988) 201 Cal.App.3d 540, 547.) All conflicts are resolved and all legitimate inferences are drawn in favor of the dependency court's order. (*Ibid.*) "[W]e review the record in the light most favorable to the court's determinations." (*In re Heather A.* (1996) 52 Cal.App.4th 183, 193.) We do not reweigh the dependency court's determinations of fact or credibility. (*Ibid.*)

Father contends that reversal is required because the statements given by Mother were not credible, as acknowledged in the jurisdiction/disposition report submitted by DCFS, which stated, "the Department is hesitant to believe all of the statements that mother has made." Father also argues that the allegations of domestic violence were too remote in time to pose a current risk of harm to the children.

Father's argument that Mother is not credible does not compel reversal. We do not second-guess the dependency court's determinations of credibility. (*In re Heather A.*, *supra*, 52 Cal.App.4th 183, 193.) To the extent that the trial court relied on Mother's statements, we assume it was justified in doing so. In any event, there was substantial evidence of domestic violence aside from the statements given by Mother. Father himself acknowledged that domestic violence occurred on more than one occasion, and the statements of Luis and Mariana regarding domestic violence corroborated much of the evidence given by Mother.

A long line of cases has held that domestic violence harms children and is a valid basis for finding dependency jurisdiction. "'Both common sense and expert opinion . . . indicate spousal abuse is detrimental to children.'" (*In re Sylvia R.* (1997) 55 Cal.App.4th 559, 562, citing *In re Benjamin D.* (1991) 227 Cal.App.3d 1464, 1470, fn. 5.) The dependency court need not wait until a child suffers actual physical harm before finding jurisdiction. "It is clear to this court that domestic violence in the same household where children are living *is* neglect; it is a failure to protect [children] from the substantial risk of encountering the violence and suffering serious physical harm or illness from it. Such neglect *causes* the risk." (*In re Heather A.*, *supra*, 52 Cal.App.4th at p. 194.)

7

Father's contention that the domestic violence was too far removed in time to constitute a risk also fails. Father relies on *In re Daisy H*. (2011) 192 Cal.App.4th 713, which held: "Physical violence between a child's parents may support the exercise of jurisdiction under section 300, subdivision (b) but only if there is evidence that the violence is ongoing or likely to continue and that it directly harmed the child physically or placed the child at risk of physical harm." (*Id.* at p. 717.) The domestic violence at issue in *In re Daisy H*. occurred seven years prior to the filing of the section 300 petition. (*Ibid.*) In contrast, in this case, the most recent episode of domestic violence between Mother and Father occurred no more than six months before the petition was filed. And substantial evidence supported the conclusion that the violence was likely to continue— there were numerous instances of violence between Mother and Father (as well as Mother and Father's girlfriend), and Mother continued to hold a great deal of animosity toward Father.

In sum, substantial evidence supported a finding of jurisdiction. This finding was certainly appropriate under section 300, subdivision (b), as domestic violence is frequently found to give rise to jurisdiction under that subdivision. (See, e.g., *In re Heather A.*, *supra*, 52 Cal.App.4th at p. 194; *In re Basilio T*. (1992) 4 Cal.App.4th 155, 168.) Since we find that jurisdiction was supported under section 300, subdivision (b), it is unnecessary to determine whether it was also appropriate under subdivision (a). "When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence." (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 451; see also *In re Jonathan B*. (1992) 5 Cal.App.4th 873, 875.)

We also note that the acts giving rise to jurisdiction here involved both Father *and* Mother. "[T]he court takes jurisdiction over children (§ 300); it does not take jurisdiction over parents." (*In re Joshua G.* (2005) 129 Cal.App.4th 189, 202.) "[A] jurisdictional

8

finding good against one parent is good against both.  More accurately, the minor is a dependent if the actions of either parent bring her within one of the statutory definitions of a dependent."  (*In re Alysha S.* (1996) 51 Cal.App.4th 393, 397.)  Mother did not appeal from any of the dependency court's findings, including whether jurisdiction was proper under subdivision (a) or (b).  Since jurisdiction has been established, we need not determine if it was justified under multiple grounds.

## **DISPOSITION**

The December 12, 2013 order is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


BOREN, P.J.

We concur:


ASHMANN-GERST, J.


CHAVEZ, J.