Filed 9/1/16  In re D.J. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re D.J., a Person Coming Under the Juvenile Court Law. | C081234 |
| SACRAMENTO COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES, Plaintiff and Respondent, v. MELANIE M., Defendant and Appellant. | (Super. Ct. No. JD236103) |

Melanie M., mother of the minor D.J., appeals from the juvenile court's orders terminating her parental rights and freeing the minor for adoption.  (Welf. & Inst. Code, §§ 366.26, 395; unless otherwise set forth, statutory references that follow are to the Welfare and Institutions Code.)  She contends the orders must be reversed because the

1

Sacramento County Department of Health and Human Services (the Department) wrongfully deprived her of the opportunity to establish the beneficial parental relationship exception to adoption by failing to provide her with court-ordered visitation. We affirm the juvenile court's orders.

FACTS AND PROCEEDINGS

The minor was born in May of 2015. Mother had used methamphetamine and opiates during her pregnancy with the minor, resulting in the minor being placed in neonatal intensive care. Mother has a lengthy criminal, substance abuse, and mental health history. The minor's father also has a history of substance abuse.

Upon the minor's June 11, 2015, discharge from the hospital, the Department filed a section 300 petition on behalf of the minor based on mother's lengthy substance abuse and mental health history, and father's substance abuse history. Mother also has a lengthy criminal history and a Child Protective Services history involving the general neglect of the minor's half sibling. The minor was detained and placed with her maternal aunt. The juvenile court ordered a minimum of twice-a-week visitation for mother and father.

The day after the June 18, 2015 detention hearing, mother was arrested for robbery, for which she was ultimately convicted and sentenced to 270 days in custody. The Department did not, at that time, seek a reduction in the visitation order based on any alleged inappropriateness or inability to provide the ordered visitation. It did not, however, provide mother with any visitation.

In its July 15, 2015 jurisdiction report, the Department recommended the court bypass services and set a section 366.26 hearing. At a hearing on July 29, 2015, the juvenile court ordered the Department to assess whether visits with mother during her incarceration would be detrimental to the minor. No change in the visitation order was made.

2

In its August 26, 2015 addendum report, the Department recommended finding visitation during mother's incarceration would be detrimental to the minor and requested the court issue a no-contact order.

The jurisdiction hearing took place on September 2, 2015, at which the court sustained the section 300 petition. Also on that date, the Department filed a motion requesting the court set aside the standing twice-a-week visitation order and issue a new order suspending visitation during mother's incarceration. The court ordered the motion be heard with the upcoming September 21, 2015, contested disposition hearing.

On September 21, 2015, mother filed an order to show cause, seeking sanctions against the Department for failure to provide mother with visitation pursuant to the June 18, 2015, detention order. Hearing on the motion was set for October 14, 2015. The court (referee Natalie Lindsey presiding) proceeded with the disposition hearing, adjudging the minor a dependent child of the court and bypassing the parents for reunification services. The court denied the Department's motion to suspend visitation during mother's incarceration, finding visitation would not be detrimental to the minor. Instead, the court ordered at least two visits to take place prior to mother's anticipated November 6, 2015, release date.

The hearing on mother's order to show cause took place on October 28, 2015, and the court's ruling was issued on December 9, 2015. The Department opposed the motion for sanctions, arguing the failure to make the referral was an oversight made by an inexperienced social worker. The court (referee Natalie Lindsey presiding) found that the violation of the visitation order had been intentional, fairly egregious, and without substantial justification or good cause. The court noted that such violation "virtually ensures the erosion of the parent-child relationship" and that the Department was a "repeat offender." Accordingly, the court fined the Department $1,500.

In its section 366.26 report, the Department stated that it arranged for two visits on October 22, 2015, and November 3, 2015. During both visits, mother was reported to engage well with the minor. Mother played with her, changed her diaper, and fed her. Mother also showed up at one of father's scheduled visits. Mother, however, appeared to be under the influence and was asked to leave. Mother and father also attended a visit together on December 29, 2015. The visit started well but mother then fell asleep while feeding the minor. When father intervened, mother became upset. Father asked the social worker to explain to mother that it was not safe for her to hold the child while falling asleep. Mother told the social worker that her new medication she takes in the morning makes her drowsy five hours later.

The Department also reported that the minor was healthy, developmentally on target, and did not present with any emotional or behavioral problems. The minor appeared happy and her maternal aunt (and wife) were able to adopt, committed to adopting the minor, and had begun the homestudy process. The Department recommended parental rights be terminated.

The hearing took place on January 13, 2016 (Judge Richard Gilmour presiding). Mother was not present and, although mother had reported transportation problems earlier that morning, her counsel could not explain her absence at the mid-afternoon hearing. Mother's counsel objected to the Department's recommended finding that the minor is likely to be adopted and asserted that the parental bonding exception should apply. The Department responded that it did not believe the exception applied because the parents were not offered reunification services and have had very little contact with the child. The juvenile court found the minor adoptable and terminated parental rights.

4

I

*Generally*

At the selection and implementation hearing (§ 366.26), a juvenile court must choose one of the alternative permanent plans provided by statute. The Legislature's preference is for adoption. If the juvenile court finds a minor adoptable and no circumstances would make the termination of parental rights detrimental to the minor, the juvenile court must terminate parental rights. (*In re Ronell A.* (1996) 44 Cal.App.4th 1352, 1368.) The parent has the burden of establishing an exception to termination of parental rights. (Cal. Rules of Court, rule 5.725(e)(3); *In re Zachary G.* (1999) 77 Cal.App.4th 799, 809.)

The beneficial parental relationship exception applies when "[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i).) To prove that the beneficial parental relationship exception applies, the parent must show there is a significant, positive emotional attachment between the parent and child. (*In re Beatrice M.* (1994) 29 Cal.App.4th 1411, 1418-1419.) And even if there is such a bond, the parent must prove that the parental relationship " 'promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents.' " (*In re S.B.* (2008) 164 Cal.App.4th 289, 297, quoting *In re Autumn H.* (1994) 27 Cal.App.4th 567, 575; accord, *In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1345.)

II

*Estoppel*

Mother argues that the Department should be estopped from arguing that the beneficial relationship exception to adoption does not apply here because it was the Department's failure to provide her with court-ordered visitation that prevented her from establishing the elements of the exception.  We reject her argument.

First, mother did not raise this argument in the juvenile court.  Mother's counsel simply objected to termination of parental rights based on the allegation that the exception "*should*" apply.  Because mother did not raise the issue of estoppel in the juvenile court, she has forfeited the issue for appeal.  (*In re Joshua G.* (2005) 129 Cal.App.4th 189, 195, fn. 4.)  "It is too late to attempt to invoke estoppel as a defense to an action, for the first time, on appeal."  (*Sinai v. Mull* (1947) 80 Cal.App.2d. 277, 284.)

Mother argues that the issue of estoppel was not forfeited because the issue of visitation had been before the juvenile court in previous proceedings so "both the trial court as well as the department, were well aware of mother's position that the department's failure to abide by the court order for visitation interfered with her relationship with [the minor]."  However, it was a different judge (referee Natalie Lindsey) who entered the sanctions order against the Department for not facilitating visitation.  It cannot be said that Judge Richard Gilmour, who presided over the section 366.26 hearing, was fully apprised of the details of the controversy, other than perhaps being aware that sanctions were ordered.  In any event, mother cannot rely on the juvenile court to raise and consider potential defenses sua sponte.  It is incumbent on mother to raise defenses she wants the juvenile court to consider or make factual findings to support.  This she did not do.

6

Second, mother cannot establish the elements of equitable estoppel. "In order to find equitable estoppel, four elements must be present: (1) the Department must be apprised of the facts; (2) the Department must intend that its conduct shall be acted upon, or must so act that the parents had a right to believe it was so intended; (3) the parents must be ignorant of the true state of the facts; and (4) the parents must rely upon the conduct to their injury. [Citation.] Further, for the doctrine to apply, the parents' reliance must be reasonable. [Citations.]" (*In re Joshua G.*, *supra*, 129 Cal.App.4th at p. 196.) Here, mother cannot establish that she was ignorant of the true state of the facts. She clearly knew she was not provided visitation during her incarceration, as she raised it in her motion for sanctions. Nor can mother establish that she relied on the Department to remain silent and not argue that the beneficial parental relationship exception did not apply. There is nothing in the record to suggest that the Department ever indicated it would not make such an argument. Thus, the elements of equitable estoppel are not present here.

Finally, " ' "[a]lthough equitable estoppel may apply to government actions where justice and right so require, 'estoppel will not be applied against the government if the result would be to nullify a strong rule of policy adopted for the benefit of the public [citations] or to contravene directly any statutory or constitutional limitations. [Citation.]' [Citations.]" ' (*Emma Corp. v. Inglewood Unified School Dist.* (2004) 114 Cal.App.4th 1018, 1028-1029.) The public policy here is the protection of abused and neglected children (§ 300.2) and the children's need for stability and permanence (*In re Marilyn H.* (1993) 5 Cal.4th 295, 309). [¶] The Department is an arm of the government and its duty is to protect the best interests of dependent children. (*In re Danielle W.* (1989) 207 Cal.App.3d 1227, 1234.) It also has a duty to apprise the court of all relevant facts and circumstances when issuing reports. (*In re John F.* (1994) 27 Cal.App.4th 1365, 1377-1378.)" (*In re Joshua G.*, *supra*, 129 Cal.App.4th at p. 197.)

7

Thus, regardless of the reason for mother's lack of bond with the minor, the Department had a duty to report it to the court assessing the minor's adoptability. Requiring the Department to stand by in silence would nullify the strong rule of public policy that it must act in the minor's best interests and apprise the court of relevant facts and circumstances. The equitable estoppel doctrine is inapplicable.

## III

### *Failure to Provide Visitation*

Mother appears to make a separate argument that reversal is required because the Department's failure to provide her with court-ordered visitation handicapped her ability to assert the beneficial relationship exception to adoption applied. She does not, however, identify the legal basis for reversal. Instead, she relies on the decision in *In re Hunter S.* (2006) 142 Cal.App.4th 1497 (*Hunter S.*) to support her claim. Mother's reliance on *Hunter S.* is misplaced.

In *Hunter S.*, the mother filed a section 388 petition seeking to reinstate services and permit her to visit as had been ordered by the court. (*Hunter S., supra,* 142 Cal.App.4th at pp. 1505-1506 & fn. 5.) The juvenile court denied the section 388 petition and terminated parental rights, after failing to enforce its own visitation order over a period of almost three years. The juvenile court's failure to enforce its own visitation order allowed the mother's once "loving close relationship" with her five-year-old son to atrophy. (See *Hunter S.,* at p. 1501.) The Court of Appeal reversed the juvenile court orders terminating parental rights and denying the mother's section 388 petition. (*Hunter S.,* at p. 1509.) *Hunter S.* is factually and procedurally distinguishable.

Here, unlike the mother in *Hunter S.*, mother had minimal contact with the minor after her birth. Although she had an opportunity to begin to form a bond during the minor's post-birth hospital stay, she made no effort to parent her. Instead, she would leave the minor unattended in her hospital room in order to go outside to smoke. When

8

she did visit the minor, she did so between the hours of 2:00 a.m. and 4:00 a.m., and did so while under the influence of drugs. Mother was then incarcerated the day after the minor's detention, and remained incarcerated for several months while the minor's case proceeded to the selection and implementation stage. The minor never lived with mother, having lived with her aunt her entire young life. At no time did mother have a close or loving relationship with the minor. And even if mother and minor had been provided weekly monitored visitation at the jail during the months following the infant's detention, it is highly improbable mother could have developed such a bond. "The kind of parent-child bond the court may rely on to avoid termination of parental rights under the exception . . . does not arise in the short period between the termination of services and the section 366.26 hearing." (*In re Richard C.* (1998) 68 Cal.App.4th 1191, 1196.) Accordingly, *Hunter S.* is factually inapposite.

Moreover, unlike the mother in *Hunter S.*, who filed a section 388 petition, mother here failed to make any request for relief at all. Although mother filed a motion for sanctions against the Department, that motion did not request any relief which would assist mother in forming the necessary bond she alleges she was prevented from forming due to the Department's failure to facilitate court-ordered visitation. Mother did not file a section 388 petition, nor did she make any other request, such as a continuance of the section 366.26 hearing to permit her additional visitation. She simply asserted that the exception to adoption applied and challenges the finding that it does not on appeal. *Hunter S.* has no application here.

9

DISPOSITION

The orders of the juvenile court are affirmed.


     HULL     , Acting P. J.


We concur:


     MAURO     , J.


     MURRAY     , J.