Filed 8/19/14  In re L.B. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**COPY**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re L.B., JR., et al., Persons Coming Under the Juvenile Court Law. | C075696 |
| SACRAMENTO COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>B.B. et al.,<br><br>Defendants and Appellants. | (Super. Ct. Nos. JD229532, JD229533, JD229534, JD229535, JD229936, JD233798) |

L.B. (father) and B.B. (mother) appeal from the judgment entered by the juvenile court as to minors J.B., K.B., C.B., L.B., Jr., P.B., and A.B. declaring the minors dependents of the court and removing them from the parents' custody. (Welf. & Inst. Code, § 395; unless otherwise stated, statutory references that follow are to the Welfare

1

and Institutions Code.) They attack one out of the court's three jurisdictional findings. Since the court's other findings justified its exercise of jurisdiction, the parents' contention does not raise any genuine jurisdictional issue. And even if the parents' contention were correct, there is no order we could make that could have any practical effect on subsequent proceedings. We dismiss the appeal as nonjusticiable. (*In re I.A.* (2011) 201 Cal.App.4th 1484 (*I.A.*).)

FACTS AND PROCEEDINGS

In light of our disposition, we need not set out the history of the case in great detail.

In April and July 2009, the Sacramento County Department of Health and Human Services (the Department) filed section 300 petitions as to all of the minors in the present case except A.B., who had not yet been born. The juvenile court sustained the petitions as amended, exercised jurisdiction over the minors, placed them in foster care, and ordered reunification services for the parents. After returning the minors to the parents' custody in 2010, the court terminated dependency jurisdiction in May 2011.

In September 2013, the Department filed new petitions as to all six minors, alleging grounds for jurisdiction under section 300, subdivisions (a), (b), and (j). Under subdivision (a) (serious physical harm), the petitions alleged:

"a-1 There is a substantial risk that the children . . . will suffer serious physical harm inflicted nonaccidentally by the father . . . in that the father has a history of using excessive corporal punishment on the children's sibling, J[.B.]. The acts of excessive corporal punishment include, but are not limited to[:] the father holding a knife to the child, J[.B.]'s face and threatening the children with physical bodily harm. Further, on September 17, 2013, the child, J[.B.][,] was diagnosed during his medical exam at the Children's receiving home with a second degree burn to the left forearm, in which the

2

parents . . . did not seek medical attention. The [parents'] failure to protect places the children at substantial risk of physical harm, abuse and/or neglect.

"a-2  The child's mother . . . has failed to protect the child, J[.B.] . . . from repeated acts of physical abuse inflicted on the child by the father . . . with the most recent incident occurring on or about September 17, 2013, . . . the father held the child on the wall with a knife up to his face while threatening to cut him and his siblings on the face, neck and hands. The acts of abuse include, but are not limited to, [father] poking the child with a knife as a form of discipline. Further, on September 17, 2013, the child was diagnosed during his medical exam at the Children's receiving home with a second degree burn to the left forearm, in which the parents . . . did not seek medical attention. The mother knew or should have known of the abuse and failed to intervene to protect the child. The mother's failure to protect places the children at substantial risk of physical harm, abuse and/or neglect."

Under subdivision (b) (failure to protect), the petitions alleged:

"b-2  The children's parents . . . have failed to provide adequate care and shelter for the children . . . in that the condition of the [parents'] home does not meet basic health and safety standards. On or about September 16, 2013, the [parents'] home was covered with dirty clothes and garbage over the entire floor surface so that the floors were not visible, ragged mattresses with holes on the floor soiled in dirt used for the children's bedding, . . . broken glass on the floors, dirty dishes all over the kitchen, and rotting food in the kitchen. There were broken car parts inside and outside of the home creating hazardous conditions for the children; there were holes in the doors and walls, and all the children were covered in dirt with poor hygiene. Additionally, the home had little to no infant supplies in the home to feed, cloth[e] or bath[e] the infants. The [parents'] failure to provide adequate care and shelter places the children at substantial risk of physical harm, abuse, and/or neglect.

"b-3 The parents . . . have failed to protect the children . . . in that they have a history of engaging in acts of domestic violence in the presence of the children with the most recent incident occurring on or about September 16, 2013. The acts of domestic violence include, but are not limited to, the father slapping, choking, and throwing the mother on [the] ground, covering the mother's mouth and destroying personal possessions in the presence of the children. The mother has failed to take reasonable steps to protect the children from domestic violence as she continues to reside with the father upon his release from jail, has not benefit[]ed from previous services provided to her around domestic violence, refuses to obtain a restraining order and continues to involve [*sic*] in on-going domestic violence in the home in the presence of the children. The parents' continued domestic violence places the children at substantial risk of physical harm, abuse and/or neglect."

Under subdivision (j) (abuse of sibling), the petitions alleged:

"j-1 On April 6, 2009, the children [involved in the prior case] . . . were removed from the parents due in part to the mother . . . [delivering] a new baby and her four other children were taken into protective custody from the father . . . for brandishing a weapon while the mother and children were present and the children setting the mother's mattress on fire while the mother was on it. The siblings were also removed due to medical neglect and substance abuse by the father. On July 7, 2009[,] the children were adjudicated [d]ependent [c]hildren of the Sacramento County Juvenile Court, pursuant to [] section 300 [(a)], (b) and (j) Petition of the Welfare and Institutions Code was filed on behalf of the children. [*Sic*.] Additionally, the parents failed to provide adequate care and supervision of the children. On May 4, 2009, the parents were provided [f]amily [r]eunification services which included PCIT, anger management, [c]ounseling, and [alcohol] and other drug services. The parents successfully completed, the children were returned to their care[,] and dependency was terminated for the children on May 16, 2011."

4

After a contested jurisdiction/disposition hearing in January 2014, the juvenile court sustained the allegations of the petitions as amended, adjudicated the minors to be dependents of the juvenile court, ordered their placement in foster care, and granted the parents reunification services  The court deleted the allegation that the parents failed to seek medical attention for J.B.'s second degree burn, and inserted the allegation that mother as well as father had physically abused J.B.

## DISCUSSION

Father, joined by mother, contends there was no basis to sustain the allegations of the petitions as to section 300, subdivision (j).  But the parents do not attack the court's findings as to section 300, subdivisions (a) and (b)--which, as father impliedly concedes, justified the court's exercise of jurisdiction.  (*In re Joshua G.* (2005) 129 Cal.App.4th 189, 202 [court has jurisdiction if actions of either parent bring child within one of statutory definitions in section 300].)  Specifically, after ignoring those findings throughout his argument, father states at the bottom of page 24 of his opening brief: "Moreover, the [subdivision (j)] count was unwarranted because all the children were protected under the sustained subdivision (a) and (b) counts."  In other words, father concedes that the substantiated allegations under those subdivisions proved the children needed the juvenile court's protection.  Furthermore, the parents have not shown that the finding they challenge could harm them in any subsequent proceedings.  Therefore, this appeal must be dismissed as nonjusticiable.

"It is a fundamental principle of appellate practice that an appeal will not be entertained unless it presents a justiciable issue.  [Citation.]" (*I.A., supra*, 201 Cal.App.4th at p. 1489.)  "An important requirement for justiciability is the availability of 'effective' relief--that is, the prospect of a remedy that can have a practical, tangible impact on the parties' conduct or legal status." (*Id.* at p. 1490.)  "When the court

5

cannot grant *effective* relief to the parties to an appeal, the appeal must be dismissed. [Citation.]" (*Ibid.*)

Seeking to show some possible future harm from the juvenile court's finding under section 300, subdivision (j), father asserts: "It is undisputed here that there was a previous dependency case. In summarizing that case into a condensed statement of facts for purposes of the subdivision (j) allegation, [the Department] in effect elevated count j-1 to an independent basis of jurisdiction. It relied in part on the prior proceeding as a basis for the instant second proceeding. In the foreseeable future, [the Department] could allege the historical fact of two prior dependency cases as the basis for a third proceeding. These are identifiable legal and practical, consequence[s] of the sustained subdivision (j) finding." But it is pure speculation that there might be a "third proceeding" in this case or that the Department might "allege the historical fact of two prior dependency cases" as the sole basis for filing new petitions.

Furthermore, even if all this speculation came to pass, the juvenile court could not find jurisdiction merely because there had been prior dependency cases. "In any future dependency proceeding, a finding of jurisdiction must be based on current conditions. [Citation.] A past jurisdictional finding . . . would be entitled to no weight in establishing jurisdiction, even assuming it was admissible for that purpose. Instead, the agency will be required to demonstrate jurisdiction by presenting evidence of then current circumstances placing the minor at risk." (*I.A., supra*, 201 Cal.App.4th at p. 1495.) Thus, there is no possibility that the parents could suffer future prejudice from the jurisdictional finding they challenge now.

Father also asserts: "The issue raised is also a novel question of law." But father does not explain what the alleged "novel question of law" is, or how it would provide any basis for granting appellate relief.

"Because we find no threatened prejudice to [the parents] from [the challenged] jurisdictional finding, we decline to exercise our discretion to review it." (*I.A., supra*, 201 Cal.App.4th at p. 1495.)

DISPOSITION

The appeal is dismissed.


      HULL      , Acting P. J.


We concur:


      BUTZ      , J.


      MURRAY      , J.