Filed 2/25/15  In re Rylee

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re RYLEE M., a Person Coming Under the Juvenile Court Law. | |
| | D066466 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. J518858B) |
| v. | |
| RYAN M., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Kenneth J. Medel, Judge.  Affirmed.

Elizabeth C. Alexander, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Erica R. Cortez, Deputy County Counsel, for Plaintiff and Respondent.

Ryan M. appeals following the jurisdictional and dispositional hearing in the juvenile dependency case of his son, Rylee M. Ryan contends the jurisdictional findings and the order removing Rylee from his custody are unsupported by substantial evidence. We affirm.

BACKGROUND

Ryan and Patricia S. (together, the parents) have two children together: R.M., born in September 2013, and Rylee, born in June 2012.[1] In December 2012, Ryan was convicted of inflicting corporal injury on Patricia. In September and October 2013, there were child welfare referrals in Riverside County regarding Patricia's care of R.M. At a team decision meeting held there in October, it was agreed that Ryan would "have . . . Rylee in his care." (Italics omitted.) Between February 2014 and April 2014, there were four reported incidents of domestic violence between the parents in Rylee's presence: one in February, one in March and two on April 23.

On February 24, 2014, the San Diego County Health and Human Services Agency (the Agency) received a report that on February 19, Patricia treated Rylee roughly and the parents yelled and "cuss[ed]" at each other in front of Rylee and their services provider at Community Services for Families. Ryan had "been told to call the police when he feels that things are escalating." On February 19, he called the police after he and Patricia began arguing in a car.[2] He said he had told her to get out of the car, but she refused and

---

[1] The instant case involves only Rylee. R.M. is the subject of a separate dependency case. The parents' contact with R.M. was supervised.

[2] The parents were homeless and usually stayed in their car.

2

"yanked" Rylee out of his car seat. Patricia later said Ryan hit her, although she did not tell the police that because she was not sure she wanted Ryan arrested. Rylee exhibited aggressive behavior after the incident. The parents denied the incident had occurred. The Agency deemed the report of Patricia's physical abuse of Rylee "unfounded" and the parents' emotional abuse of Rylee "inconclusive."

The Agency implemented a safety plan which included the parents' agreement to live separately, refrain from arguing and fighting in Rylee's presence and continue their services with Community Services for Families. Those services included education regarding the harm suffered by children who witness domestic violence. The social worker advised Ryan to show he could protect Rylee and to obtain a custody order in family court. Ryan agreed.

On April 4, 2014, the Agency received a report that on March 18, there had been a physical fight between the parents, during which Ryan had scratched Patricia's face and chest while she was holding Rylee. The parents denied the incident. The Agency attempted to initiate a new safety plan, but Ryan was unwilling to sign the plan. The Agency deemed the report of emotional abuse of Rylee inconclusive, citing conflicting information.

On April 23, 2014, Ryan called the social worker and reported Patricia was involved in an incident of domestic violence with her boyfriend, Kevin. The incident occurred in Ryan and Rylee's presence. Ryan said that during a second incident on April 23, Patricia "brought with her two men to threaten and intimidate [Ryan]" in Rylee's presence. The argument escalated and the social worker repeatedly told Ryan to leave

3

the scene with Rylee. Ryan ignored this advice. Eventually Ryan's girlfriend, B.B., left the scene with Rylee. By the time the police arrived, Rylee was gone. Ryan reported that Rylee was upset by the incident. Ryan also claimed he had been told Patricia was using methamphetamine and there were methamphetamine users in the home where Patricia was staying with Rylee. The social worker implemented a second safety plan prohibiting Patricia from having contact with Rylee until completion of an investigation. Ryan agreed to the plan.

On April 30, 2014, the Agency received a report the parents had violated the second safety plan by arriving together with Rylee for a doctor's appointment for R.M. Ryan claimed the parents' simultaneous arrival was coincidental. On May 6, the social worker called Ryan to ask how the safety plan was working. Ryan replied that Patricia had seen Rylee a couple of times at supervised visits with R.M. The social worker reminded Ryan that the safety plan precluded visits between Patricia and Rylee. Ryan responded he brought Rylee to a visit "because he didn't have a choice" and claimed he and Patricia never had problems at visits with R.M. The social worker explained the danger involved and said she was going to file a dependency petition for Rylee. Ryan yelled and swore at the social worker, threatened to hide Rylee and hung up the telephone.

On May 8, 2014, the Agency filed a dependency petition for nearly two-year-old Rylee. (Welf. & Inst. Code, § 300, subd. (b).)[3] The petition alleged he was exposed to

_____

3    Further statutory references are to the Welfare and Institutions Code unless otherwise specified.

4

violent confrontations between Patricia and Kevin, and the parents had agreed on a safety plan but did not comply with the plan.

Rylee remained in the care of Ryan, who was homeless. The Agency did not know Rylee's whereabouts. Ryan had notice of the May 9, 2014, detention hearing but did not appear. The court issued a pick up and detain order for Rylee. By late May, Community Services for Families had terminated Ryan's services due to lack of attendance and lack of communication.

On June 2, 2014, Ryan appeared in court for the first time. The court ordered him to release Rylee to the social worker. After the hearing, the social worker searched for Rylee without success. On June 23, Ryan produced Rylee and the social worker took Rylee into custody and detained him in foster care. In July, the court made true findings on the petition, and ordered Rylee removed from the parents' custody and placed in a foster home.

THE JURISDICTIONAL FINDINGS

The purpose of section 300 "is to provide maximum safety and protection for children who are currently being physically, sexually, or emotionally abused, being neglected, or being exploited, and to ensure the safety, protection, and physical and emotional well-being of children who are at risk of that harm." (§ 300.2.) Section 300, subdivision (b) allows a dependency when "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent . . . to adequately supervise or protect the child . . . ." Section 300 requires proof the child is subject to the defined risk of harm at

5

the time of the jurisdictional hearing. (*In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1396.) A parent's " '[p]ast conduct may be probative of current conditions' if there is reason to believe that the conduct will continue." (*In re S.O.* (2002) 103 Cal.App.4th 453, 461.) The child need not have been actually harmed for the court to assume jurisdiction. (See *In re James R.* (2009) 176 Cal.App.4th 129, 135.)

In the juvenile court, the Agency had the burden of proof by a preponderance of the evidence.[4] (*In re Matthew S.* (1996) 41 Cal.App.4th 1311, 1318; § 355, subd. (a).) Ryan now has the burden of showing the jurisdictional findings are not supported by substantial evidence. (*In re Diamond H.* (2000) 82 Cal.App.4th 1127, 1135.) We view the record in the light most favorable to the juvenile court's ruling. (*In re S.A.* (2010) 182 Cal.App.4th 1128, 1140.)

Ryan argues the Agency failed to prove he was negligent; the Agency deemed all reports of domestic violence unfounded, inconclusive or unsupported by sufficient evidence; there was no substantial evidence the parents violated the safety plan; and "[b]y the time of the . . . hearing, there had been no ongoing alleged violence around R[ylee] in four months." In support of the quoted assertion, Ryan cites the Agency's trial counsel's acknowledgement, on July 23, 2014, "that there hasn't been any more violence since the April 23rd incident." This is a period of three months, not four. Ryan also claims the April 23 incident involved Patricia and Kevin, not Ryan. During both of the April 23 incidents, however, Ryan was present with Rylee and allowed him to be exposed to the violence.

---

4     Here, the court made the jurisdictional findings by clear and convincing evidence.

The true finding did not require proof that Ryan was negligent. "Dependency proceedings are civil in nature and are designed to protect the child, not to punish the parent. [Citation.] Therefore, the court takes jurisdiction over children (§ 300); it does not take jurisdiction over parents. Moreover, the court has jurisdiction over the children if the actions of either parent bring the child within one of the statutory definitions in section 300." (*In re Joshua G.* (2005) 129 Cal.App.4th 189, 202.)

The incidents in February and March 2014 led to reports that were inconclusive for child abuse of Rylee. This does not negate the conclusion that Rylee was at substantial risk of suffering serious physical harm as a result of the parents' failure or inability to protect him. " 'Inconclusive report' means a report that is determined by the investigator who conducted the investigation not to be unfounded, but the findings are inconclusive and there is insufficient evidence to determine whether child abuse or neglect . . . has occurred." (Pen. Code, § 11165.12, subd. (c).) The March incident constituted a violation of the first safety plan; the April 23 incidents constituted violations of the second safety plan; and Ryan again violated the second safety plan by later allowing Patricia to have contact with Rylee. The juvenile court found the accounts of domestic violence credible, a finding we cannot second guess. "We do not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts." (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 228.) The court was entitled to draw its own conclusions from the reports and made no error in doing so.

Ryan's history of inflicting violence on Patricia began more than one and one-half years before the hearing. The Agency attempted to educate Ryan regarding the dangers

7

of exposing Rylee to violence, and Ryan said he understood "why it is bad for kids to be around fighting." Nevertheless, he continued to allow Rylee to be exposed to domestic violence until a couple of weeks before the Agency filed the dependency petition. The Agency instituted safety plans, but Ryan's cooperation was limited and he did not avail himself of the offered domestic violence services. When the social worker informed Ryan she was going to file the petition, he reacted with hostility. Ryan hid Rylee and prevented the Agency from taking him into custody for weeks. At the hearing, Ryan's outbursts demonstrated his continuing hostility and continuing unwillingness to protect Rylee.

Substantial evidence supports the jurisdictional findings.

## THE REMOVAL

Section 361, subdivision (c)(1) provides that before a child can be removed from parental custody, the Agency must prove, by clear and convincing evidence, "[t]here is or would be a substantial danger to [his] physical health, safety, protection, or physical or emotional well-being if [he] were returned home" and there were no reasonable alternative means of protecting his physical health. " 'There must be clear and convincing evidence that removal is the only way to protect the child.' " (*In re A.S.* (2011) 202 Cal.App.4th 237, 247, quoting *In re N.M.* (2011) 197 Cal.App.4th 159, 170.) "The parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate. The focus . . . is on averting harm to the child." (*In re Diamond H.*, *supra*, 82 Cal.App.4th at p. 1136.) The court may consider the parents' past conduct and current situation and gauge whether they have progressed sufficiently to eliminate any

8

risk. (*In re S.O.*, *supra*, 103 Cal.App.4th at p. 461; cf. *In re Jonathan R.* (1989) 211 Cal.App.3d 1214, 1221.) On appeal, Ryan has the burden of showing there is no substantial evidence justifying Rylee's removal. (*In re Diamond H.,* at p. 1135; *In re Geoffrey G.* (1979) 98 Cal.App.3d 412, 420.)

Ryan contends there was no clear and convincing evidence of a substantial danger to Rylee if he remained with Ryan; the court did not consider reasonable alternatives to removal; the Agency did not prove the absence of such alternatives; and the court did not give reasons for the removal.

" ' "The sufficiency of evidence to establish a given fact, where the law requires proof of the fact to be clear and convincing, is primarily a question for the trial court to determine, and if there is substantial evidence to support its conclusion, the determination is not open to review on appeal." [Citations.]' [Citation.] Thus, on appeal from a judgment required to be based upon clear and convincing evidence, 'the clear and convincing test disappears . . . [and] the usual rule of conflicting evidence is applied, giving full effect to the respondent's evidence, however slight, and disregarding the appellant's evidence, however strong.' " (*Sheila S. v. Superior Court* (2000) 84 Cal.App.4th 872, 880-881, quoted in *In re Mark L.* (2001) 94 Cal.App.4th 573, 580-581.)

Under this deferential standard of review, the facts described above amply support the conclusion there was a substantial danger to Rylee if he remained with Ryan and less restrictive alternatives had proved inadequate to protect Rylee. Before making its dispositional order, the court discussed the facts in great detail, including the Agency's attempts to ameliorate the situation without taking Rylee into custody. The court cited

the continuing and repetitive risks to Rylee's safety; the "quite severe and detrimental" consequences to a child who witnesses domestic violence; and Rylee's need "to be raised in a[n] . . . environment without domestic violence . . . ." The record is clear that Ryan failed to comprehend the risks of exposing Rylee to violent confrontations and flaunted the court's orders.

Substantial evidence supports the removal order.

## CONCLUSION

Unassailable evidence supports the jurisdictional finding and the removal order. Ryan's briefs blatantly ignore much of the salient evidence. This appeal borders on frivolous.

## DISPOSITION

The judgment is affirmed.

McCONNELL, P. J.

WE CONCUR:

BENKE, J.

IRION, J.

10