Filed 3/1/16  Alexis M. v. Superior Court CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| ALEXIS M. et al., | D069322 |
| Petitioners, | |
| v. | (San Diego County Super. Ct. No. J518774D) |
| THE SUPERIOR COURT OF SAN DIEGO COUNTY, | |
| Respondent; | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY et al., | |
| Real Parties in Interest. | |


ORIGINAL PROCEEDINGS in mandate after a reference to a Welfare and Institutions Code section 366.26 hearing.  Carol Isackson and Sharon Kalemkiarian, Judges.  Petitions denied; stay vacated.


Dependency Legal Group of San Diego and John P. McCurley for Petitioner Alexis M.

Dependency Legal Group of San Diego and Amanda J. Gonzalez for Petitioner Guadalupe O.

No appearance by Respondent.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Lisa Maldonado, Deputy County Counsel, for Real Party in Interest San Diego County Health and Human Services Agency.

Dependency Legal Group of San Diego and Beth Ploesch for Real Party in Interest, S.M., a Minor.

Alexis M. and Guadalupe O. seek writ review of the jurisdictional order in the juvenile dependency case of their minor daughter, S.M. Alexis claims that the evidence does not support the jurisdictional findings involving him. Guadalupe joins Alexis's claim. Because Alexis's contention, even if accepted, would not justify reversal of the court's jurisdictional order or the grant of any other effective relief, his contention is not justiciable. We therefore deny the petitions.

FACTUAL AND PROCEDURAL BACKGROUND

Consistent with our standard of review, we state the facts in the manner most favorable to the juvenile court's order. (*In re Janee W.* (2006) 140 Cal.App.4th 1444, 1448, fn. 1.)

On November 12, 2014, the San Diego County Health and Human Services Agency (the Agency) petitioned the juvenile court under Welfare and Institutions Code

2

section 300, subdivision (f)[1] on behalf of newborn S.M. Guadalupe gave birth to S.M. while in custody awaiting trial on murder and assault charges arising from the death of her nine-month-old son, Kevin M. Guadalupe told the Agency that Alexis was S.M.'s father, and he was named as S.M.'s alleged father in the petition. Alexis was Kevin's father as well.

The Agency alleged that Kevin's death was a homicide resulting from blunt force head trauma. The Agency further alleged that Kevin suffered nonaccidental scalp hemorrhages, subdural hemorrhages, and retinal and optic nerve hemorrhages, which Guadalupe and Alexis could not adequately explain. The Agency reported that Guadalupe and Alexis said Kevin had fallen from a bed two days prior to his death and become lethargic, but they did not obtain medical care. The Agency concluded that Guadalupe and Alexis had caused Kevin's death through abuse or neglect.

At the detention hearing, the court found the Agency had made a prima facie showing under section 300, subdivision (f) and ordered S.M. detained in out-of-home care. Guadalupe's parentage inquiry questionnaire showed she had married another man, Alvaro Z., in 1996 and they had not divorced. S.M.'s counsel requested that the Agency's petition be amended to show Alvaro as an alleged father. The court amended the petition as requested. The court also ordered paternity testing for Alexis.

In its jurisdiction and disposition report, the Agency recommended (1) the court find jurisdiction over S.M. under section 300, subdivision (f); (2) the court remove S.M.

---

[1] Further statutory references are to the Welfare and Institutions Code.

3

from her parents' custody; (3) reunification services to Guadalupe (and to Alexis, should he be found to be a presumed father) be denied under section 361.5, subdivision (b)(4) and (6); and (4) a selection and implementation hearing under section 366.26 be set. Acknowledging that he remained an alleged father, Alexis requested a trial on the issue of reunification services only. Guadalupe requested a trial on the truth of the jurisdictional allegations as well as the availability of reunification services.

In advance of the contested jurisdiction and disposition hearing, the Agency requested judicial notice of the petitions and jurisdictional orders in the dependency case of Guadalupe's older children, who were S.M.'s half siblings. The Agency also submitted the detention report from that dependency case, along with police, forensic, and investigative reports regarding Kevin's death.

Alexis's paternity test confirmed he was S.M.'s biological father. The Agency obtained S.M.'s birth certificate, which listed Alexis as her father. At a settlement conference, the court amended the petition to show Alexis was S.M.'s biological father. The court also found that Alvaro was S.M.'s presumed father based on his marriage to Guadalupe.

The Agency requested that the court amend the petition to remove the explicit allegation that Alexis caused Kevin's death by abuse or neglect. The Agency also requested that the court add an allegation regarding Alexis's role in the events leading to Kevin's death: "The father did not intervene when he saw the mother shake [Kevin] and did not bring [Kevin] in for medical treatment when he saw the child looked lethargic." The court amended the petition as requested.

4

At the contested jurisdiction and disposition hearing, the court took judicial notice of dependency case files for Guadalupe's older children and admitted various Agency reports (including the police, forensic, and investigative reports regarding Kevin's death noted above) into evidence. In police reports, Alexis and Guadalupe initially reported they were with Kevin in their bedroom on the night of his death. They said Kevin fell off the bed, hit his head on the floor, and immediately turned blue. Guadalupe said she shook Kevin to try to revive him. A family member called emergency personnel.

Later Alexis and Guadalupe admitted they were not in the bedroom when Kevin fell. Guadalupe said she did not tell the truth initially because she was afraid her other children would be taken away. Guadalupe and Alexis told police they were actually in the living room when they heard a loud noise. They went into the bedroom and saw Kevin face down on the ground. Guadalupe shook Kevin for 15 or 20 seconds to try to get a response from him. Kevin moaned and began changing colors. Guadalupe subsequently denied ever shaking Kevin.[2]

Following an autopsy, a medical examiner concluded that Kevin's cause of death was blunt force head trauma and the manner of death was homicide. The examiner

---

[2]     Alexis and Guadalupe also told police about the incident two days earlier when Kevin had also fallen off the bed. After the fall, Kevin became wedged between the bed and a wall. Guadalupe told police she might have shaken Kevin when she pulled him away from the bed, but she did not intend to hurt him. Afterwards, Kevin looked very tired and acted sluggish. Alexis said he told Guadalupe they should take Kevin to the doctor, but Guadalupe said they would be accused of hurting Kevin. Guadalupe said she had wanted to get Kevin medical attention, but it was Alexis who disagreed. Alexis recalled that eventually Kevin's symptoms began to improve. A social worker visited the home on an unrelated matter and did not note any injuries to Kevin.

determined that Kevin suffered a large right subdural hematoma, an extensive right scalp hemorrhage, scattered injuries of the external scalp, and various residual subdural hematomas, including along the spinal cord. The medical examiner concluded that Kevin's injuries were inconsistent with Alexis's and Guadalupe's report of what happened: "The history of a short distance fall prior to becoming unresponsive is inconsistent with the acute subdural hemorrhage diagnosed radiologically and treated surgically. The other short distance fall reported to have occurred two days prior is also inconsistent with the acute and organized hemorrhages, with areas of organization estimated to be a few weeks old."

The juvenile court also received a report from a pathologist, who assessed whether Kevin's injuries (including to his eyes) were indicative of abusive head injury such as shaking. The pathologist determined that Kevin's injuries, including subdural hemorrhages, scattered retinal hemorrhages and hemorrhagic retinoschosis, and cerebral edema, supported a finding of abuse. Given other factors, including that Kevin had few signs of external injury, the vague and contradictory reports from Alexis and Guadalupe, and the fact that no plausible explanation existed for the extent of Kevin's injuries, the pathologist concluded that Kevin's death was caused by recent abuse: "In conclusion, it is the presence of all of these case details that, in my expert medical opinion, shows that all evidence points to no other possible cause of death for this baby boy, besides recent abuse. There should be no doubt in this case." (Some capitalization omitted.)

Guadalupe and Alexis did not present any affirmative evidence regarding jurisdiction. No party requested live testimony, so the juvenile court considered the issue

6

on the basis of the admitted Agency reports and attachments. The juvenile court made a true finding on the allegations of the Agency's petition and concluded that S.M. was a person described by section 300, subdivision (f).

As to disposition, the court considered the previously-admitted Agency reports and attachments and heard live testimony from an Agency social worker. The Agency asked the court to deny reunification services to Guadalupe under section 361.5, subdivision (b)(4) and (6). The Agency also asked the court to deny services to Alexis—who remained a biological, not presumed, father—because it would not be in S.M.'s best interest. Alexis's counsel argued that it would be in S.M.'s best interest to offer Alexis services.

The juvenile court denied reunification services to both Guadalupe and Alexis. Initially the court cited section 361.5, subdivision (b)(4) and (6) as the basis for denial as to both parents. After the Agency's counsel reminded the court that Alexis was only a biological father, however, the court concluded that it would not be in S.M.'s best interest to offer Alexis reunification services. The court set a selection and implementation hearing under section 366.26.

Alexis filed a petition for writ of mandate in this court challenging the court's jurisdictional finding as lacking sufficient evidence. (*Alexis M. v. Superior Court* (D067524).) Alexis also filed a petition for writ of habeas corpus alleging ineffective assistance of counsel based on his trial counsel's failure to seek presumed father status and failure to investigate. (*In re Alexis M.* (D067842).) As to the latter petition, the Agency responded by letter suggesting that the matter be returned to the juvenile court

7

for an evidentiary hearing. By separate orders, this court issued an order to show cause returnable in superior court on Alexis's habeas petition and dismissed Alexis's mandate petition without prejudice to refiling after the juvenile court's consideration of the order to show cause.

The juvenile court denied Alexis's petition for writ of habeas corpus on the merits, finding that Alexis's counsel's representation was deficient but concluding that Alexis had not shown prejudice. The court again set a selection and implementation hearing under section 366.26.

Alexis filed the current petition for writ of mandate challenging the court's jurisdictional findings. Guadalupe filed a petition joining Alexis's arguments. This court stayed the scheduled selection and implementation hearing, and these proceedings followed.[3]

## DISCUSSION

Alexis argues the court's true finding on the Agency's jurisdictional allegations involving him was not supported by the evidence. The Agency's specific allegations regarding Alexis included the following: "The father did not intervene when he saw the mother shake [Kevin] and did not bring [Kevin] in for medical treatment when he saw the child looked lethargic." Alexis asserts that "presumably the intended substance of the

---

[3]     Alexis has also filed a second petition for writ of habeas corpus in this court alleging ineffective assistance of counsel. (*In re Alexis M.* (D069583).) We deny that petition in a separate order filed this date.

8

Agency's allegation was that [Alexis] not intervening and not getting medical care for Kevin were concurrent causes of Kevin's death."[4]

Alexis does not challenge the sufficiency of the evidence supporting the Agency's allegation that Guadalupe caused Kevin's death through abuse or neglect. Nor does Alexis challenge the court's dispositional findings. Although Alexis's prayer for relief requests that this court reverse the juvenile court's jurisdictional findings "as to [Alexis]" and vacate the court's order setting a selection and implementation hearing for S.M., Alexis does not explain how the latter action flows from the former.

This omission is not merely a failure of logic on Alexis's part; it raises a fundamental issue of the justiciability of Alexis's petition. "It is a fundamental principle of appellate practice that an appeal will not be entertained unless it presents a justiciable issue." (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1489 (*I.A.*).) "An important requirement for justiciability is the availability of 'effective relief'—that is, the prospect of a remedy that can have a practical, tangible impact on the parties' conduct or legal status." (*Id.* at p. 1490.) This requirement limits the court's power to decide only those disputes which present actual controversies and render only those judgments that can be carried into effect. (*Ibid.*) "When the court cannot grant *effective* relief to the parties to an appeal, the appeal must be dismissed." (*Ibid.*) The same principle holds true here: when the

---

[4]     Although it is immaterial to the disposition of this writ petition, we disagree that Alexis's assertion fits the most natural interpretation of the Agency's allegations. In fact, as we have noted, the Agency specifically amended its petition to *remove* the allegation that Alexis caused Kevin's death through abuse or neglect.

court cannot grant effective relief to a party seeking writ of mandate, the petition must be denied.

To determine whether we can grant Alexis effective relief, we first consider the effect of Alexis's contentions on the challenged jurisdictional order. "The court asserts jurisdiction with respect to a child when one of the statutory prerequisites listed in section 300 has been demonstrated." (*I.A., supra*, 201 Cal.App.4th at p. 1491.) "For jurisdictional purposes, it is irrelevant which parent created those circumstances. A jurisdictional finding involving the conduct of a particular parent is not necessary for the court to enter orders binding on that parent, once dependency jurisdiction has been established. [Citation.] As a result, it is commonly said that a jurisdictional finding involving one parent is ' "good against both. More accurately, the minor is a dependent if the actions of either parent bring [him] within one of the statutory definitions of a dependent." ' " (*Id.* at p. 1492; see *In re Joshua G.* (2005) 129 Cal.App.4th 189, 202-203.) Here, even if the juvenile court's findings regarding Alexis's conduct were reversed, the court's true finding on the jurisdictional allegations involving Guadalupe's conduct would remain. Because these allegations are sufficient to support the juvenile court's jurisdictional order, the juvenile court would still properly have jurisdiction over S.M. even if Alexis's argument were meritorious. (See *I.A.,* at p. 1492 ["The juvenile court will still be entitled to assert jurisdiction over the minor on the basis of the unchallenged allegations."].)

Where jurisdiction over the minor is properly obtained, the court is empowered to schedule a selection and implementation hearing provided that the statutory requirements

for setting such a hearing are met.  Even if the jurisdictional allegations involving him were reversed, "the court will still be permitted to exercise personal jurisdiction over [Alexis] and adjudicate his parental rights, if any, since that jurisdiction is derivative of the court's jurisdiction over the minor and is unrelated to [Alexis's] role in creating the conditions justifying the court's assertion of dependency jurisdiction."  (*I.A., supra*, 201 Cal.App.4th at p. 1492.)  The partial reversal Alexis seeks would therefore have no effect on the court's ability to set a selection and implementation hearing.

Even if we were to reverse the juvenile court's true findings on the allegations involving Alexis, it would not have any "practical, tangible impact" on Alexis's position in S.M.'s dependency case.  (*I.A., supra*, 201 Cal.App.4th at p. 1492; see *id.* at p. 1493 ["While arguably we could vacate the juvenile court's implicit finding regarding Father's conduct, vacating that finding would have neither legal nor practical consequence."].)  The juvenile court would retain jurisdiction over S.M. and its ability to set a selection and implementation hearing would be unchanged.  The status of S.M.'s dependency case, and Alexis's place within it, would remain the same.  We can therefore provide Alexis no effective relief on his petition, even if we agreed with his substantial evidence arguments.

Where, as here, the court cannot grant effective relief to the petitioning party, the issue raised by that party is not justiciable and should not be considered on its merits. (*I.A., supra*, 201 Cal.App.4th at p. 1492.)  Moreover, Alexis has provided no reason for this court to exercise its discretion to consider Alexis's petition on its merits, and our review of the record reveals none.  (*Id.* at pp. 1494-1495; see *In re A.R.* (2014) 228 Cal.App.4th 1146, 1150-1151; cf. *In re Drake M.* (2012) 211 Cal.App.4th 754, 762-763.)

11

We will therefore deny Alexis's petition. Guadalupe's petition simply joins Alexis's arguments, so we will deny it as well.

## DISPOSITION

The petitions are denied. The stay previously issued by this court is vacated.


O'ROURKE, J.

WE CONCUR:


McCONNELL, P. J.


NARES, J.

12