Filed 6/13/24  In re S.B. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re S.B., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E082019 |
| Plaintiff and Respondent, | (Super. Ct. No. J297727) |
| v. | OPINION |
| E.B., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Steven A. Mapes, Judge.  Affirmed in part, reversed in part.

Suzanne Davidson, under appointment by the Court of Appeal, for Defendant and Appellant.

Tom Bunton, County Counsel, and David Guardado, Deputy County Counsel, for Plaintiff and Respondent.

1

I.

INTRODUCTION

Defendant and appellant E.B. (Father) is the father of S.B., a daughter born in July 2016. Father appeals from the juvenile court's August 15, 2023 jurisdictional/dispositional orders adjudicating S.B. a dependent of the court (Welf. & Inst. Code, § 300, subds. (b), (g)),[1] removing S.B. from parental custody (§ 361, subd. (c)(1)), and ordering Father to complete a domestic violence program, among other services.[2] Father requests this court's review of only a portion of the jurisdictional allegation pertaining to his conduct even though independent, unchallenged grounds exist for the court's dependency jurisdiction over the child based on Mother's conduct. Father claims insufficient evidence supports the court's jurisdictional finding against him and that the court abused its discretion in requiring him to complete a domestic violence program. We conclude insufficient evidence supports the one jurisdictional finding against Father and reverse the jurisdictional and dispositional orders as to Father, but affirm the court's jurisdictional and dispositional orders as to Mother.

---

[1] All future statutory references are to the Welfare and Institutions Code unless otherwise stated.

[2] K.J. (Mother) is not a party to this appeal.

FACTUAL AND PROCEDURAL BACKGROUND

The family came to the attention of plaintiff and respondent the San Bernardino County Children and Family Services (CFS) on July 3, 2023, after a referral was received alleging Mother and A.N., the father of S.B.'s half-sibling, then-one-year-old K.N., engaged in domestic violence in the presence of the children.  Specifically, Mother and A.N. were driving with the children in their vehicle when they began arguing and A.N. punched Mother in the face.  A.N. reported this was not the first time the children had been exposed to domestic violence.  At the time, Mother had a no negative contact order against A.N.

Mother confirmed there had been ongoing domestic violence between her and A.N., one of which involved a referral to CFS for an incident that occurred in March 2021.  CFS's investigation in 2021 resulted from an incident in which A.N. threw a chair at Mother that hit S.B. in the face, causing a laceration to the child's eye.  After the 2021 incident, Mother obtained a restraining order against A.N. but subsequently modified the order to allow peaceful contact.  A.N. had previously been required to complete services to address domestic violence but failed to do so.  Mother reported being in a relationship on and off with A.N. and that law enforcement had been called to the home several times due to incidents of domestic violence.  Mother noted that she and A.N. argued continuously in the home.

Then-six-year-old S.B. reported that she had witnessed the most recent incident of domestic violence, as well as many of the prior incidents. S.B. noted that she had attempted to intervene in these incidents by placing herself between Mother and A.N. during altercations. S.B. desired Mother and A.N. to stop fighting and for A.N. to leave the home and not return. Father was incarcerated with a projected release date of January 2024. CFS determined S.B. could not safely remain in the home, obtained a protective custody warrant, detained her, and temporarily placed her in foster care.

On July 6, 2023, CFS filed a petition on behalf of S.B. pursuant to section 300, subdivisions (b) (failure to protect) and (g) (no provision for support). The petition alleged that Mother had a history of engaging in domestic violence, placing the child at risk of physical and emotional harm. Under section 300, subdivision (g), the petition also alleged that Father was incarcerated in state prison with a release date of January 2024 and could not provide adequate care and support for the child thereby placing the child at risk of abuse and neglect.

S.B. was formally detained at the July 7, 2023, detention hearing. Mother was present and noted Father had been in custody for approximately six months to a year. The court set the matter for a combined jurisdiction/disposition hearing.

CFS recommended that the court find true the allegations in the petition, S.B. be removed from parental custody, and the parents be provided with reunification services. The recommended case plan for Father included general counseling, parenting education, and a domestic violence program. Mother reported Father had been in custody since

4

October 2022. She also stated that Father had paid child support for a period of time but that she had not received any monetary support for S.B.'s care since 2019. S.B. was again interviewed and described ongoing domestic violence in the home. She noted that she was "sad" when A.N. hit Mother and reported being afraid of A.N.

The contested jurisdictional/dispositional hearing was held on August 15, 2023. Both parents were present. In pertinent part, Father's counsel objected to the court sustaining the section 300, subdivision (g) allegation against him. He also objected to the inclusion of domestic violence services as part of his reunification services plan. Father's counsel argued that Father had been incarcerated due to driving under the influence charge and that domestic violence services were not warranted in his case. Following argument by all counsel, the juvenile court found true all of the allegations in S.B.'s petition as pled. The court declared S.B. a dependent of the court, removed her from parental custody and provided the parents with reunification services and supervised visitations once a week for two hours. Father's case plan, which included domestic violence services, was approved as submitted by CFS. Father's appeal followed.

III.

DISCUSSION

Father contends there is insufficient evidence to support the jurisdictional finding regarding his conduct. He also asserts that if this court finds substantial evidence supported the jurisdictional finding under section 300, subdivision (g), his case plan should be modified to delete the domestic violence component.

5

CFS argues that Father's appeal is nonjusticiable because Father does not challenge the jurisdictional findings regarding Mother's conduct and, therefore, any decision we might render would not deprive the juvenile court of its authority to assert jurisdiction over S.B. (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1490 (*I.A.*) ["An important requirement for justiciability is the availability of 'effective' relief—that is, the prospect of a remedy that can have a practical, tangible impact on the parties' conduct or legal status."].)

A. *Justiciability*

Justiciability refers to whether an issue is an existing controversy and not a moot question or abstract proposition. An important requirement of justiciability is a court's ability to grant "effective" relief—that is, a remedy that can have a practical, tangible impact on the parties' conduct or legal status. It is our duty to decide actual controversies by a judgment that can be carried into effect, and not to give opinions upon moot questions or abstract propositions. (*In re Madison S.* (2017) 15 Cal.App.5th 308, 328-329; *I.A.*, *supra*, 201 Cal.App.4th at p. 1490.)

The purpose of dependency law is the protection of the child. (*In re Joshua G.* (2005) 129 Cal.App.4th 189, 202.) In accordance with the law's purpose, the juvenile court overseeing a dependency proceeding takes jurisdiction over the child whenever one of the statutory prerequisites in section 300 has been satisfied. (*In re Alysha S.* (1996) 51 Cal.App.4th 393, 397.) Because a finding that *one* parent's conduct has created circumstances triggering section 300 is sufficient to assert jurisdiction over the child, an

6

appellate court may decline to review jurisdictional findings based on the *other* parent's conduct. (*I.A.*, *supra*, 201 Cal.App.4th at pp. 1491-1492.)

Nonetheless, an appellate court may exercise its discretion to reach the merits of an otherwise nonjusticiable challenge to a juvenile court's jurisdictional finding if the finding: (1) serves as the basis for dispositional orders that are also challenged on appeal; (2) could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings; or (3) could have consequences for the appellant beyond jurisdiction. (*In re Drake M.* (2012) 211 Cal.App.4th 754, 762-763 (*Drake M.*).)

In this case, Father does not challenge the jurisdictional findings based on Mother's conduct, and there is more than substantial evidence to support jurisdiction of S.B. based on Mother's conduct alone. (See *I.A.*, *supra*, 201 Cal.App.4th at pp. 1491-1492.) Father, nonetheless, requests that we reach the merits of the jurisdictional findings against him because they are prejudicial to him in this case and any future dependency proceedings as he was a nonoffending parent. Father also argues that we should reach the issue because the court's finding under section 300, subdivision (g), as it related to him, formed the basis for the dispositional order.

In *Drake M.*, *supra*, 211 Cal.App.4th 754, the court exercised its discretion to consider the custodial father's challenge to jurisdiction because he was seeking custody of the child and the outcome of the appeal would mean the difference between the father being an "offending" versus a "non-offending" parent (*id*. at p. 763), a distinction that could affect the father's custody rights under section 361, subdivision (c)(1), when there

7

is clear and convincing evidence that a child would be in substantial danger if returned home, the "court shall consider, as a reasonable means to protect the minor . . . [¶] . . . [¶] [a]llowing a nonoffending parent [or] guardian . . . to retain physical custody." (§ 361, subd. (c)(1).)

We conclude that there is at least a colorable claim that the jurisdictional finding against Father have already impacted Father in these proceedings, as evidenced by the juvenile court's orders removing S.B. from Father's custody.  In addition, Father is correct in that if there is insufficient evidence to support the section 300, subdivision (g) allegation against him, "the outcome of this appeal is the difference between [F]ather's being an 'offending' parent versus a 'non-offending' parent." (*Drake M.*, *supra*, 211 Cal.App.4th at p. 763.)  "Such a distinction may have far-reaching implications with respect to future dependency proceedings in this case and [F]ather's parental rights." (*Ibid.*; see *In re D.P.* (2015) 237 Cal.App.4th 911, 917 ["[T]he finding on the section 300, subdivision (c) allegation could potentially affect future dependency proceedings."].)

Accordingly, we exercise our discretion to reach the merits of Father's challenge to the jurisdictional findings against him.  (*Drake M.*, *supra*, 211 Cal.App.4th at p. 763; *In re D.M.* (2015) 242 Cal.App.4th 634, 638-639 [exercising discretion to decide merits of appeal challenging jurisdictional findings involving one of two parents].)

8

B. *Sufficiency of the Evidence of Jurisdictional Finding Against Father*

Father argues the juvenile court erred in sustaining the petition against him on the ground that he was incarcerated without finding he was mentally or physically incapable of arranging for S.B.'s care by a relative.

"'In reviewing the jurisdictional findings and the disposition, we look to see if substantial evidence, contradicted or uncontradicted, supports them. [Citation.] In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court.' [Citations.]" (*In re R.T.* (2017) 3 Cal.5th 622, 633.) However, we note that CFS had the burden of proof as to each fact necessary to sustain the jurisdictional petition, and that Father "was not required to demonstrate anything" and could prevail "without making any factual showing at all." (*In re S.D.* (2002) 99 Cal.App.4th 1068, 1078 (*S.D.*).)

Additionally, "'[w]hen a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the [child] if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence.' [Citation.]" (*In re I.J.* (2013) 56 Cal.4th 766, 773-774.)

9

In the present matter, the juvenile court sustained the petition under section 300, subdivisions (b)(1) against Mother and (g) relating to Father. Subdivision (b)(1) provides, in pertinent part, that a child comes within the jurisdiction of the juvenile court if "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of . . . [¶] (A) The failure or inability of the child's parent or guardian to adequately supervise or protect the child. [¶] (B) The willful or negligent failure of the child's parent . . . to adequately supervise or protect the child from the conduct of the custodian with whom the child has been left. [¶] (C) The willful or negligent failure of the parent . . . to provide the child with adequate food, clothing, shelter, or medical treatment. [¶] (D) The inability of the parent or guardian to provide regular care for the child due to the parent's . . . mental illness, developmental disability, or substance abuse." (§ 300, subd. (b)(1).) Neither Father nor Mother have challenged the court's jurisdiction over S.B. under section 300, subdivision (b)(1), and we find substantial evidence to support the court's jurisdiction over S.B. pursuant to section 300, subdivision (b)(1).

"Section 300, subdivision (g), authorizes the juvenile court to adjudge a minor a dependent child of the court where 'the minor's parent has been incarcerated or institutionalized and cannot arrange for the care of the minor . . . .' [Citation.] The careful analysis found in *In re Aaron S.* (1991) 228 Cal.App.3d 202 . . . provides an authoritative interpretation of the statutory language. The court concluded that '[t]he use of the present tense verb in the statute, "cannot arrange," indicates that the circumstances

10

justifying the dependency must exist at the time of the hearing.  [Citations.]  Accordingly, section 300, subdivision (g) applies when, at the time of the [jurisdictional] hearing, a parent has been incarcerated and does not know how to make, or is physically or mentally incapable of making, preparations or plans for the care of his or her child.'  [Citation.]"  (*In re Monica C.* (1995) 31 Cal.App.4th 296, 304-305.)  "Put another way, 'neither incarceration alone nor the failure to make an appropriate advance plan for the child's ongoing care and supervision is sufficient to permit the exercise of jurisdiction under subdivision (g).'  [Citation.]  Moreover, '[n]othing in section 300, subdivision (g) even requires an incarcerated parent . . . to prove affirmatively the suitability of [his or] her caretaking arrangements.  It requires only that [he or] she be able to make the arrangements.'  [Citation.]"  (*In re M.R.* (2017) 7 Cal.App.5th 886, 897 (*M.R.*).)

Without more, a parent's inability to care for or financially support a child personally due to incarceration is not grounds for dependency jurisdiction under section 300, subdivisions (b)(1) or (g).  (See, e.g., *In re Noe F.* (2013) 213 Cal.App.4th 358, 366 [finding under subdivision (b), that "incarceration, without more, cannot provide a basis for jurisdiction"]; *In re Monica C.*, *supra*, 31 Cal.App.4th at p. 305 [subdivision (g) "requires only that an incarcerated parent arrange adequately for the care of the child during the period of his or her incarceration"]; *S.D.*, *supra*, 99 Cal.App.4th at p. 1077 ["[t]here is no 'Go to jail, lose your child' rule in California"]; *In re Andrew S.* (2016) 2 Cal.App.5th 536, 542 ["Neither [section 300, subdivision (b) nor subdivision (g)] justifies

11

the juvenile court's assumption of jurisdiction over an otherwise well-cared-for child simply because an absent parent has not provided support."].)

*S.D.*, *supra*, 99 Cal.App.4th 1068, is instructive and supports reversal.  In *S.D.*, the mother left her two-year-old child with a relative when she went out to dinner.  (*Id*. at p. 1071.)  The relative was arrested and police took the child into custody.  (*Id*. at p. 1072.)  The next day the mother was arrested.  (*Ibid*.)  The petition alleged the mother was incarcerated and neither parent was available to care for the child, but there was no allegation or evidence that the mother was unable to arrange for the child's care during her incarceration.  (*Id*. at p. 1071.)  In fact, the record "strongly suggest[ed] that [the mother] had several options for care of [the minor] during her incarceration."  (*Ibid*.)  The child was placed with a maternal aunt after the detention hearing and again after the 12-month review hearing.  (*Id*. at pp. 1072-1073, 1075-1076.)  The juvenile court dismissed the section 300, subdivision (b) allegations, leaving section 300, subdivision (g) as the sole basis for jurisdiction.  (*S.D.*, *supra*, at p. 1074.)

In assessing the mother's claim of ineffective assistance of counsel for failing to assert a defense to section 300, subdivision (g), the Court of Appeal found it was "irrelevant that [the mother] had not already arranged for [the child]'s care at the time of her incarceration."  (*S.D.*, *supra*, 99 Cal.App.4th at p. 1077.)  The court held that the issue under section 300, subdivision (g), is whether the parent could arrange for care, not whether the parent had done so, and that the agency had the burden of proof and was required to establish that the parent could not arrange for care.  (*S.D.*, *supra*, at p. 1078.)

12

On the record before it, the court had "no problem concluding that [the agency] failed to sustain its factual burden." (*Ibid*.) The court emphasized that, under the statute, the parent is not required to affirmatively prove the caretaking arrangements are suitable. (*Id*. at p. 1079.) The statute requires only that the parent is able to make the arrangements and, if the agency wishes to challenge the suitability of the arrangement, it must proceed under another of the clauses in section 300, subdivision (g). (*S.D.*, *supra*, at p. 1079.)

Here, at the time of Father's incarceration, S.B. was in Mother's custody. Thus, there was no reason for Father to make any appropriate arrangements for the child's care at the time he was incarcerated. After S.B. was detained, the record does not indicate whether Father had any opportunity to attempt to arrange for S.B.'s care with any relatives, such as with the paternal grandmother or the paternal aunt before CFS intervened.[3] As in *S.D.*, the record establishes that Father had family members who may have been willing to assume care of S.B., including the paternal grandmother and the paternal aunt.[4] (See *S.D.*, *supra*, 99 Cal.App.4th at p. 1071 [finding that the mother had ineffective assistance of counsel where her attorney agreed that section 300, subdivision

---

[3] CFS had inquired of the paternal grandmother and the paternal aunt regarding the family's Native American ancestry, but there is no indication in the record whether Father had made arrangements for S.B.'s care once the child was detained due to Mother's ongoing domestic violence incidents with A.N.

[4] While CFS assessed the maternal grandparents for relative placement of the children, it is unknown whether CFS inquired of the paternal relatives concerning placement of S.B.

13

(g) applied even though "the record . . . strongly suggest[ed] that [the mother] had several options for care of [the child] during her incarceration"].)

Further, as in *S.D.*, CFS "pleaded and proved only that [Father] had been incarcerated, but not that []he was unable to arrange for care of" S.B. (*S.D.*, *supra*, 99 Cal.App.4th at p. 1077.) The petition here alleged, with respect to section 300, subdivision (g), that Father "is currently incarcerated at the Corcoran, California State prison with a January 2024 projected release date, thus, preventing him from providing adequate care and support to the child, [S.B.]. Such status leaves the child at risk of abuse and neglect." CFS did not allege that Father was incapable of arranging for the provision of care, supervision, and the necessities of life for S.B. We have been unable to find evidence in the record supporting that Father was physically or mentally unable to make appropriate custody arrangements for S.B., nor does CFS identify any such evidence on appeal. In fact, at the time of the jurisdictional hearing, CFS noted that it had not interviewed Father as he was in custody. However, Father had attended several of the hearings and also requested supervised phone visits with S.B. while incarcerated.

Relying on *In re James C.* (2002) 104 Cal.App.4th 470 (*James C.*), CFS asserts, "[w]hile Father is correct that merely being incarcerated is not a sufficient basis for jurisdiction under [s]ection 300, subdivision (g), Father ignores his own culpability in the child's status as a [d]ependent child." CFS further asserts that Father's "disinterest" in S.B's "well-being demonstrates that he has no ability to provide for her care." CFS's reliance on *James C.* is misplaced and that case is distinguishable. First, as explained

14

above, Father does not have to prove the allegation. Second, in *James C.*, the petition alleged that the father was incarcerated and unable to provide the children with the basic necessities of life. And, unlike here, substantial evidence in that case showed the children were living in squalid, filth-infested conditions that jeopardized their health and safety. (*James C.*, *supra*, at pp. 482-483.) It is unknown here whether Father was disinterested in S.B. as CFS claims, because CFS never interviewed Father, despite having opportunities to do so. In any event, the record indicates that Father was not disinterested in his child, as CFS suggests. He recognized S.B. as his child. He had provided child support for S.B. from 2016 to 2017, with the most recent in 2019. He was present at several hearings, albeit telephonically while in custody, and requested phone visits with S.B. The above circumstances undermines any inference that Father was uninterested in his child or unwilling or unable to arrange for her care. (Compare *M.R.*, *supra*, 7 Cal.App.5th at p. 897 [no substantial evidence supported finding that incarcerated father did not or could not plan for the care of children under section 300, subdivision (g), where "he took an interest in them, and attempted to provide for them to some degree from prison"] with *James C.*, *supra*, at p. 484 [upholding jurisdiction under section 300, subdivision (g), and finding lack of evidence incarcerated father ever showed interest in or attempted to care for children sufficient for juvenile court to infer that he was unable or unwilling to arrange for care].)

The law provides that "'neither incarceration alone nor the failure to make an appropriate advance plan for the child's ongoing care and supervision is sufficient to

15

permit the exercise of jurisdiction under subdivision (g).' [Citation.]" (*M.R.*, *supra*, 7 Cal.App.5th at p. 897; accord, *S.D.*, *supra*, 99 Cal.App.4th at p. 1077 [that the mother had not already arranged for the minor's care at the time of her incarceration was "irrelevant" to determining whether exercise of jurisdiction under section 300, subdivision (g) was appropriate].)

We conclude CFS did not carry its burden below of demonstrating that something more than the mere fact of Father's incarceration supported jurisdiction under section 300, subdivision (g). We will therefore reverse the juvenile court's true finding with respect to the exercise of jurisdiction under section 300, subdivision (g) against Father, and the dispositional order as to Father.

IV.

DISPOSITION

The jurisdictional finding and dispositional orders against Father are reversed. The jurisdictional and dispositional orders as to Mother are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

RAMIREZ
P. J.

MILLER
J.

16